IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**ALACHUA COUNTY EDUCATION
ASSOCIATION, et al.,**

    *Plaintiffs*,

v.                                        Case No.: 1:23cv111-MW/HTC

**DONALD J. RUBOTTOM, et al.,**

    *Defendants*.

_____/

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Pending before this Court is Plaintiffs' motion for preliminary injunction, ECF No. 15. Plaintiffs are public-sector unions representing Florida public school teachers and faculty. They have challenged two provisions of Florida law that go into effect July 1, 2023. One provision—the membership form requirement—requires prospective union members to sign and date a state-drafted membership authorization form with their prospective union's bargaining agent. The second provision—the payroll deduction ban—will prohibit most public employers from deducting voluntary union dues from their employees' salaries.

Plaintiffs assert these provisions are part of a concerted effort by Florida lawmakers to punish politically "disfavored unions" while exempting certain politically "favored unions" from the new law's allegedly discriminatory

requirements. They point to how these provisions' architects have sought to, in their own words, "fight against" and "rein in the school unions" and their "excessive influence" in "the school system," all without touching those unions that have "honor[ed]" them with "the[ir] rare endorsement." ECF No. 13 ¶¶ 3–4, 45. Without a doubt, Plaintiffs have raised important constitutional questions with respect to the challenged provisions. Nonetheless, they have not met their burden to prove a substantial likelihood of success in establishing standing as to either challenge at the preliminary-injunction stage. Accordingly, for the reasons set out below, Plaintiffs' motion is due to be denied.

I

Before addressing the merits of Plaintiffs' motion, this Court must first determine whether Plaintiffs have standing for purposes of a preliminary injunction. The "affirmative burden of showing a likelihood of success on the merits . . . necessarily includes a likelihood of the court's reaching the merits, which in turn depends on a likelihood that [a] plaintiff has standing." *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 328 (D.C. Cir. 1987) (Williams, J., concurring in part and dissenting in part). Any evaluation of Plaintiffs' claims, thus, necessitates an inquiry into Plaintiffs' ability to bring such claims. Indeed, this Court *sua sponte* raised its own concerns regarding standing prior to Defendants' deadline to respond to Plaintiffs' motion. *See* ECF No. 21. But Defendants did not contest Plaintiffs'

standing in their response brief. ECF No. 41 at 20 ("For these reasons, Defendants do not contest Plaintiffs' standing to challenge Sections 1 and 3 on behalf of themselves."). Nonetheless, "[a] plaintiff does not acquire standing merely because the defendant raises no objection." *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 777 F.2d 598, 607 (11th Cir. 1985).

Over time, the Supreme Court has developed a three-part test for determining when standing exists. Under that test, a plaintiff must show (1) that they have suffered an injury-in-fact that is (2) traceable to the defendant and that (3) can likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). And "where a plaintiff moves for a preliminary injunction, the district court . . . should normally evaluate standing 'under the heightened standard for evaluating a motion for summary judgment.' " *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015)). Thus, "a plaintiff cannot 'rest on such mere allegations, [as would be appropriate at the pleading stage,] but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.' " *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (some alteration in original) (quoting *Lujan*, 504 U.S. at 561).

A

First, Plaintiffs challenge section 1 of SB 256, which amends section 447.301, Florida Statutes, to require public employees wishing to join a union to sign and date a state-issued membership authorization form that includes a state-mandated message and disclosure of certain financial information pertaining to the union's leadership. *See* § 447.301(1)(b), Fla. Stat. (2023). Plaintiffs claim this new provision compels Plaintiffs to interject the state's message and state-mandated disclosures into their otherwise protected speech, in violation of their First Amendment rights.

The statute specifically provides that "a public employee who desires to be a member of an employee organization must sign and date a membership authorization form, as prescribed by the commission, with the bargaining agent." *Id*. § 447.301(1)(b)1. Further, Plaintiffs are now required to "retain for inspection by the commission such membership authorization forms . . . ." *Id*. § 447.301(1)(b)5.

In effect, Plaintiffs assert, they face an imminent injury under this statute because it will compel them to be the couriers of the state's message and state-mandated disclosures when they otherwise would not include this speech in their attempts to solicit new members. *See Wooley v. Maynard*, 430 U.S. 705, 717 (1977) ("[W]here the State's interest is to disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message."). Although most First

Amendment cases address restrictions on speech, "measures compelling speech are at least as threatening." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018). But the problem with Plaintiffs' claim is that the plain language of the provision at issue does not command Plaintiffs to speak at all.

This Court recognizes that Plaintiffs' bargaining unit certifications may ultimately be in jeopardy if they fail to collect signed forms from at least sixty percent of their dues-paying members. *See* ECF No. 41-7 at 3–4 (proposed Florida Public Employees Relations Commission (PERC) rules implementing amendment to section 447.305, Fla. Stat. (2023)[1]). This Court also agrees with Plaintiffs that, in the real world, unions that desire to continue to grow—or even exist—would most likely shoulder the burden of printing the forms, filling out the necessary disclosures, and distributing them to prospective members for signatures to avoid the consequences set out in section 447.305 and PERC's proposed rule. But while this may be the most effective and convenient way for Plaintiffs to ensure their members sign and date the forms in compliance with the new requirements, the law itself does not command Plaintiffs to take this action. Moreover, by the terms of the statute, Plaintiffs are not directly penalized if they fail to convey the state's message to

---

[1] The Florida Legislature amended section 447.305 to require "an employee organization that had less than 60 percent of the employees eligible for representation in the bargaining unit pay dues during its last registration period" to "petition [PERC] . . . for recertification as the exclusive representative of all employees in the bargaining unit . . . ." § 447.305(6), Fla. Stat. (2023). Further, "[t]he certification of an employee organization that does not comply with this section is revoked." *Id.*

members through the required form. In this way, this case is unlike each of the compelled speech cases Plaintiffs cite in support of their claim.

For example, in *Wooley*, New Hampshire commanded drivers to display the state's motto on the state's license plate. In *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781 (1988), North Carolina commanded professional fundraisers to disclose certain information to potential donors prior to any appeal for funds. And in *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018), California commanded certain facilities to disseminate various government-drafted notices.

But here, the challenged provision commands *employees* who desire to join a union to sign and date the government-drafted form. That they must do so "with the bargaining agent" does not mean the bargaining agent must disseminate the form, post the state's message, or otherwise communicate any message on the state's behalf.

Plaintiffs say, "Not so fast." Although the statute may not impose a *de jure* command to speak, it operates as a *de facto* command. In essence, unions exist to organize the disorganized, and the *practical* effect of this statute is to have unions filling out and disseminating the required forms to members old and new. They have every reason to do this, for their existence depends upon growing—or at the very least, maintaining—a membership of public employees. Indeed, even the proposed

form's instructions anticipate the unions' assistance in this endeavor. *See* ECF No. 41-6 at 3 ("The employee organization, public employee, or another person assisting the employee may complete any portion of the form with accurate information as reflected in the organization's most recent registration or renewal application filed with [PERC].").

But the statute itself does not command this. And when pressed, Plaintiffs could identify no case holding that such a *de facto* command, absent a statutory command, amounted to compelled speech. At most, Plaintiffs are commanded to *retain* the forms once they are submitted. But this does not compel them to speak. Accordingly, Plaintiffs have not met their burden to establish an injury-in-fact with respect to their compelled speech claim for purposes of ruling on their motion for preliminary injunction. Next, this Court addresses Plaintiffs' standing to challenge the second provision at issue, the payroll deduction ban.

B

Plaintiffs also lack standing to challenge section 3 of SB 256, which amends section 447.303, Florida Statutes. This provision prohibits the use of payroll deductions for payment of certain public employee union dues. Plaintiffs challenge this provision on two grounds. First, they argue the provision violates the Contracts Clause, article I, section 10 of the United States Constitution because it substantially impairs their collective bargaining agreements. Specifically, section 3 of SB 256

7

nullifies payroll deduction terms in their current agreements as soon as the law takes effect. Second, Plaintiffs argue that the state's decision to carve out a limited exception for certain groups—law enforcement officers, correctional officers, correctional probation officers, and firefighters—demonstrates that the prohibition is viewpoint discriminatory in violation of the First Amendment.

With respect to both claims, Plaintiffs have demonstrated an injury-in-fact. The challenged provision will nullify an express term of their collective bargaining agreements and eliminate the primary mode by which Plaintiffs currently collect union dues.[2] For example, Plaintiff United Faculty of Florida (UFF) has introduced evidence demonstrating that its primary source of revenue is from voluntary membership dues and that, before this year, approximately ninety-nine percent of active membership dues were paid through payroll deductions. ECF No. 15-2 ¶¶ 13, 18. Earlier this year, UFF introduced a direct-payment bank transfer option for members, but as of April 24, 2023, only twelve percent of UFF's active members had authorized payments on this platform. *Id*. ¶¶ 16, 19. According to UFF, if the

---

[2] This Court recognizes that Plaintiff Florida Education Association is essentially an intended third-party beneficiary of those dues, but the result is the same. *See* ECF No. 15-4 ¶ 13 ("Because the UFF-UF membership form specifically provides that a portion of UFF-UF dues will be used to pay fees and assessments due to UFF and FEA, the FEA is an intended third-party beneficiary of the UFF-UF membership form contract and the corresponding payroll deduction provision in the CBA."). They stand to lose the primary mode by which they have benefited from UFF's dues collection, and record evidence demonstrates that only a small minority of dues-paying members have signed up for an alternative payment method.

payroll deduction prohibition takes effect on July 1, 2023, most of its current revenue stream will likely dry up.

Defendants do not contest that this amounts to an imminent, concrete, and particularized injury. Nor do Defendants argue that such an injury is not traceable to their enforcement authority. Again, Defendants admit that their proposed implementing regulation with respect to recertification would not count an "eligible" employee as one whose dues are paid to the union in violation of this prohibition on payroll deductions. *See* ECF No. 41 at 20.

Even so, an order enjoining Defendants from enforcing this provision would offer no redress for Plaintiffs' injuries. Employers who are party to Plaintiffs' collective bargaining agreements will still be prohibited by law from deducting membership dues from their employees' salaries, regardless of whether this Court enjoins Defendants from enforcing the prohibition against employers. This might be a different case had Plaintiffs submitted evidence demonstrating that employers intended to comply with their collective bargaining agreements if this Court were to enjoin Defendants. But Plaintiffs' evidence demonstrated the opposite—their employers have communicated that they intend to follow state law and cease payroll deductions for voluntary membership dues by July 1, 2023, without any mention of PERC or what effect an injunction against PERC would have on their decision to cease payroll deductions. *See* ECF No. 42-1 at 1–14.

9

Although not a direct analogue, this situation is akin to *Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir 2020). In *Jacobson*, the Eleventh Circuit held that the plaintiffs lacked standing to sue the Secretary of State in a challenge to Florida's ballot order statute because "Florida law expressly gives a different, independent official control over the order in which candidates appear on the ballot." 974 F.3d at 1254. Accordingly, these different, independent officials—Supervisors of Elections—"remain lawfully entitled to print candidates' names on the ballot in the order prescribed by Florida law unless and until they are made parties to a judicial proceeding that determines otherwise." *Id*. This was so, in part, because "[a]s nonparties, the Supervisors [were] not obliged in any binding sense to honor an incidental legal determination [that] suit produced." *Id*. (cleaned up).[3]

---

[3] Plaintiffs requested leave to supplement their briefing with respect to standing on June 26, 2023. This Court has considered the supplemental brief, ECF No. 44-1, and determines it does not change this Court's conclusions regarding Plaintiffs' failure to demonstrate redressability as to the payroll deduction ban. Plaintiffs' supplemental brief explains two reasons why this case is distinguishable from *Jacobson*.

First, Plaintiffs cite section 447.501(2)(b), which makes it an unfair labor practice to attempt to cause a public employer to violate any provisions of that statute. Plaintiffs assert they face the additional injury of facing an unfair labor practice charge if they attempt to cause an employer to violate the payroll deduction ban. But Plaintiffs have not challenged section 447.501 in their amended complaint. Nor do Plaintiffs explain how this injury supports either their Contracts Clause claim or their viewpoint discrimination claim against the payroll deduction ban. Nor have they submitted any evidence concerning this newly asserted injury with respect to actions they would have taken to maintain their pre-section 3 payroll deduction rights but for the fear of exposure to a PERA violation. Moreover, this argument fails to explain how an order enjoining PERC from enforcing the payroll deduction ban would make it more likely that a public employer would violate state law and continue providing payroll deductions for voluntary membership dues.

Second, Plaintiffs assert that the history of public employers deducting voluntary membership dues from employees' salaries, coupled with the fact that employers committed this practice to

In short, Plaintiffs' injuries are not "redressable by prospective relief where other state actors, who aren't parties to the litigation, would remain free and clear of any judgment and thus free to engage in the conduct that the plaintiffs say injures them . . . ." *See Support Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1205 (11th Cir. 2021) (discussing *Jacobson*). Here, other state actors—namely, public colleges and universities—(1) are not parties to this action and (2) remain free and clear of any injunction against Defendants. They may, and likely will, cease payroll deductions pursuant to the challenged provision regardless of whether this Court enjoins Defendants. Indeed, as mentioned above, they have indicated that they intend

---

collective bargaining agreements, demonstrates that these employers would continue to deduct dues from payroll in violation of state statute if this Court were to enjoin PERC. But Plaintiffs' argument ignores the evidence they submitted, including (1) emails from employers signaling their plans to abide by state law and cease payroll deductions, and (2) the collective bargaining agreements, which have severability clauses that could operate to terminate the payroll deduction provisions effective July 1, 2023. Moreover, Plaintiffs cite no authority for the proposition that a public employer should violate state law when faced with a conflict between a term of a collective bargaining agreement and a state statute that prohibits that term. Plaintiffs bear the burden to establish substantial likelihood of success with respect to standing and the merits. Here, the record evidence indicating the employers' intention to comply with state law, coupled with Plaintiffs' failure to identify any authority for the notion that a collective bargaining agreement trumps state law, fails to demonstrate a substantial likelihood of success.

This Court is further unpersuaded by the argument that simply because *Jacobson* may require Plaintiffs to "sue someone who has done nothing wrong and who may in fact fully agree with the plaintiff as to the sole legal issue in the case," this Court should not follow binding precedent. *See* ECF No. 44-1 at 6. In this circuit, standing is not simply a matter of determining who is doing right or wrong or a defendant's feelings about the ultimate legal issue. This Court is also required to determine who is causing the injury—willingly or not—and whether an order enjoining the parties to the suit would redress that injury. Plaintiffs' supplemental brief does not solve the problem of redressability. In this case, as pleaded, an order enjoining PERC would not redress Plaintiffs' injuries, because the nonparty public employers are still required by law to cease payroll deductions and Plaintiffs' evidence demonstrates that these employers intend to follow the law.

11

to cease payroll deductions by July 1, 2023. Thus, an injunction against Defendants would afford no redress for Plaintiffs' injuries.

II

In sum, Plaintiffs have failed to demonstrate a substantial likelihood of success in establishing, for standing purposes, an injury with respect to their compelled speech claim and redressability with respect to their Contracts Clause and viewpoint discrimination claims. Accordingly, this Court need not address the merits of such claims. Their failure to demonstrate standing at this juncture requires this Court to deny their motion. Accordingly, Plaintiffs' motion, ECF No. 15, is **DENIED**. Plaintiffs' motion, ECF No. 44, is **GRANTED** to the extent this Court permits Plaintiffs to file their supplemental brief. Defendants' request for time to respond to the arguments Plaintiffs raise, ECF No. 44 at 2, is **DENIED as moot.**

**SO ORDERED** on June 26, 2023.

s/Mark E. Walker  
**Chief United States District Judge**