**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

| | |
|---|---|
| ALACHUA COUNTY EDUCATION ASSOCIATION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. RUBOTTOM, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:23cv111-MW/HTC |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR SECOND
MOTION FOR PRELIMINARY INJUNCTION**

## Table of Contents

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

    A.  Facts Concerning Standing.........................................................................2

    B.  Facts Concerning Irreparable Injury...........................................................4

    C.  Facts Concerning the Merits.......................................................................6

ARGUMENT .......................................................................................................7

I.    Plaintiffs Have Standing to Seek an Injunction Against Section 3's Impairment of Their Collective Bargaining Agreements. ...............................8

II.   Plaintiffs Are Likely to Succeed in Establishing that Section 3 Violates the Contracts Clause by Impairing Their CBAs..............................11

    A. Section 3 works a substantial impairment of Plaintiffs' Contracts Clause rights...........................................................................12

    B. Retroactive impairment of Plaintiffs' CBAs is not reasonable and necessary to achieve the State's professed interest in transparency..........19

III.  Plaintiffs Will Continue to Suffer Irreparable Harm if Section 3 Is Not Enjoined, and the Balance of the Harms and the Public Interest Favor Injunction. ...................................................................................23

    A. Irreparable Harm ......................................................................23

    B. Balance of the Harms and the Public Interest ...........................................26

CONCLUSION ...................................................................................................27

# Table of Authorities

**Page(s)**

## Cases

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967)..........................................................................10

*AFSCME Loc. 2957 v. City of Benton*,
513 F.3d 874 (8th Cir. 2008) ............................................................17

*Alabama Ass'n of Realtors v. HHS*,
141 S. Ct. 2485 (2021)......................................................................24

*Allied Structural Steel Co. v. Spannaus*,
438 U.S. 234 (1978)..........................................................................27

*Anderson Fed'n of Tchrs. v. Rokita*,
546 F. Supp. 3d 733 (S.D. Ind. 2021)........................................14, 17

*Arizona Publ. Serv. Co.*,
247 N.L.R.B. 321 (1980) ...................................................................17

*Ass'n of Surrogates v. State of NY*,
940 F.2d 766 (2d Cir. 1991) ........................................................17, 19

*Babbitt v. Farm Workers Nat'l Union*,
442 U.S. 289 (1979)..........................................................................10

*Baltimore Teachers Union v. City of Baltimore*,
6 F.3d 1012 (4th Cir. 1993) ..............................................................16

*Bethesda Lutheran Homes & Servs., Inc. v. Leean*,
154 F.3d 716 (7th Cir. 1998) ............................................................26

*Chattanooga Mailers Union, Loc. 92 v. Chattanooga News-Free
Press Co.*,
524 F.2d 1305 (6th Cir. 1975) ..........................................................16

*Chiles v. UFF*,
615 So. 2d 671 (Fla. 1993) ..........................................................16, 17

ii

*Cooper v. Dillon,*
  403 F.3d 1208 (11th Cir. 2005) ..........................................................26

*Cummings, McGowan & W., Inc. v. Wirtgen Am., Inc.,*
  160 F. App'x 458 (6th Cir. 2005) .......................................................15

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.,*
  459 U.S. 400 (1983) ......................................................................20, 22

*FF Cosms. FL, Inc. v. City of Miami Beach,*
  866 F.3d 1290 (11th Cir. 2017) ...........................................................8

*Florida Pub. Emps. Council 79,*
  31 FPER ¶ 257, 2005 WL 6712050 (Dec. 23, 2005) ....................6, 13

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of Am., Inc.,*
  549 F.3d 1079 (7th Cir. 2008), *abrogation recognized on other*
  *grounds*, Ill. Republican Party v. Pritzker, 973 F.3d 760
  (7th Cir. 2020)....................................................................................25

*Graphics Commc'ns Int'l Union Loc. 121-C v. S. Coupon, Inc.,*
  852 F. Supp. 970 (N.D. Ala. 1993)......................................................17

*Heights Apartments, LLC v. Walz,*
  30 F.4th 720 (8th Cir. 2022) ........................................................19, 20

*Henry v. Attorney General, Alabama,*
  45 F.4th 1272 (11th Cir. 2022) ...........................................................10

*Ill. Republican Party v. Pritzker,*
  973 F.3d 760 (7th Cir. 2020) ..............................................................25

*Jacobson v. Florida Sec'y of State,*
  974 F.3d 1236 (11th Cir. 2020) ........................................................8, 9

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed.2d (1992) ...........................8

*Michigan State AFL-CIO v. Schuette,*
  847 F.3d 800 (6th Cir. 2017) ..........................................1, 12, 17, 21

*Monell v. Dep't of Social Servs.,*
  436 U.S. 658 (1978)............................................................................26

*Odebrecht Constr., Inc. v. Fla. Dep't of Transp.*,
  715 F.3d 1268 (11th Cir. 2013) ..................................................25, 26

*Palm Beach Jr. Coll. Bd. of Trs. v. United Fac. of Palm Beach Jr.*
  *Coll.*,
  475 So .2d 1221, 1227 (Fla. 1985) ....................................................17

*Sveen v. Melin*,
  138 S. Ct. 1815 (2018)...............................................................*passim*

*Texaco, Inc. v. Short*,
  454 U.S. 516 (1982)..........................................................................18

*Toledo Area AFL-CIO Council v. Pizza*,
  154 F.3d 307 (6th Cir. 1998) .....................................................*passim*

*United States Trust Co. of N.Y. v. New Jersey*,
  431 U.S. 1 (1977).......................................................................12, 20

*United States v. Amodeo*,
  916 F.3d 967 (11th Cir. 2019) ............................................................8

*Univ. of Hawai'i Prof. Assembly v. Cayetano*,
  183 F.3d 1096 (9th Cir. 1999) ..........................................................17

**Statutes**

42 U.S.C. §1983 ...............................................................................11

Fl. Stat. §447.501(2)(b)................................................................3, 10

## INTRODUCTION

Having filed a Second Amended Complaint curing the standing defects identified by the Court in its June 26 order denying their motion for preliminary injunction, Plaintiffs now bring this second—and more targeted—motion for a preliminary injunction. This motion rests solely on Plaintiffs' Contracts Clause claim challenging Florida's retroactive ban on payroll deduction agreements set out in Section 3 of SB256. Plaintiffs' Contracts Clause claim is indistinguishable from claims on which the Sixth Circuit has, on two separate occasions, granted unions preliminary injunctive relief against statutes retroactively banning payroll deduction. *See Michigan State AFL-CIO v. Schuette*, 847 F.3d 800 (6th Cir. 2017); *Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307 (6th Cir. 1998). Both decisions found the statutes at issue unconstitutional as applied to existing collective bargaining agreements and thus found that the unions would prevail on the merits. *Schuette*, 847 F.3d at 804-05; *Pizza*, 154 F.3d at 312. There is *no* decision by any court upholding a retroactive payroll-deduction ban challenged under the Contracts Clause.

This is for good reason. The core function of the Contracts Clause is to guard against an especially pernicious type of retroactive legislation: that which destroys citizens' ability to rely on the protection of contractual commitments to plan their affairs, including in particular their financial affairs. Because unions

1

cannot effectively carry out their duty to represent employees, union and non-union alike, if they are deprived of the funds they rightly have counted on to finance that duty, and because there is no governmental interest in banning payroll deduction that cannot be satisfied through regular prospective legislation that respects existing contract rights, courts have not hesitated to protect unions from payroll-deduction bans that impair collective bargaining agreements. This Court should not be the first.

## BACKGROUND

### A.    Facts Concerning Standing

The Court's June 26 order denying Plaintiffs' first motion for preliminary injunction held that, although the Plaintiffs were injured by Section 3's payroll deduction ban, Plaintiffs were not, as the lawsuit was then configured, likely to succeed in establishing the "redressability" component of Article III standing. Dkt. No. 45 at 7-12. More specifically, the Court expressed the concern that because the only defendants then in the case were the three commissioners of the Public Employees Relations Commission ("PERC"), an order enjoining them from enforcing Section 3 would not guarantee that payroll deduction would resume, because public employers with payroll deduction provisions in their CBAs might follow Section 3 rather than honor their CBAs. *Id.* at 9-10.

The Court also expressed the concern that, while the Union Plaintiffs had argued that Fl. Stat. §447.501(2)(b), a provision of Florida's Public Employees' Relations Act ("PERA") identifying certain conduct as "unfair labor practices," would inhibit them from attempting to induce employers to resume dues deduction in the event PERC is enjoined from enforcing Section 3, the plaintiffs "have not challenged section 447.501 in their amended complaint." Dkt. 45 at 10 n.3.

Those concerns have now been addressed.

The Second Amended Complaint, filed July 14, 2023, now names as defendants those public employers who are signatories to the CBAs at issue in Plaintiffs' first preliminary injunction motion. Dkt. No. 48 ("SAC") ¶¶33-37. In particular, the Alachua County School Board ("ACSB") is now a defendant, as are the Trustees of the University of Florida (collectively, "UF"). *Id.* ¶¶33-34. The Second Amended Complaint asks not only that the Court enjoin PERC from enforcing Section 3 but also that it enjoin the employer-signatories from invoking Section 3 as a basis for refusing to honor their CBAs' dues deduction provisions. Prayer for Relief, ¶¶(b)-(c). It further specifies that Plaintiffs are challenging Section 447.501(2)(b) as applied to attempts by unions to induce employers to comply with payroll deduction provisions that, but for Section 3, would be valid and enforceable. *Id.* ¶¶74, 82.

The Second Amended Complaint also adds as plaintiffs two new unions, the Pinellas County Teachers Association ("PCTA") and the Hernando United School Workers ("HUSW"), who are also parties to CBAs containing payroll deduction provisions impaired by Section 3's retroactive payroll deduction ban. *Id.* ¶¶18-21. The Second Amended Complaint then correspondingly adds as defendants the public employers who signed those CBAs, namely, the Pinellas County School Board ("PCSB") and the Hernando County School Board ("HCSB"). *Id.* ¶¶35-36. And it seeks the same relief against those employer defendants as against ACSB and UF. Prayer for Relief, ¶¶(b)-(c).

ACEA, UFF, PCTA, and HUSW are referred to in this brief as the "Union Plaintiffs," and ACSB, UF, PCSB, and HCSB are referred to as the "Public Employer Defendants." The PERC commissioners are referred to as the "PERC Defendants."[1]

### B.    Facts Concerning Irreparable Injury

Defendants UF and HCSB have a 12-month payroll cycle with respect to some of the employees represented by UFF and HUSW. Burnett Decl. ¶13. Those employers stopped remitting dues to Plaintiffs UFF and HUSW effective July 1,

---

[1] An additional new plaintiff, Lafayette Education Association ("LEA"), has been added principally because of the impact that Section 4 of SB 256 is likely to have on its ability to survive as a bargaining agent. LEA is not seeking a preliminary injunction as to Section 3; thus, the fact that the Lafayette County School Board is not a defendant has no relevance to the instant motion.

2023, resulting in a substantial decrease in the dues revenues that those Plaintiffs, as well as Plaintiff FEA,[2] expected when they entered into their respective CBAs. Burnett Decl. ¶14; *see also* Dkt. No. 15-2, First Gothard Decl. ¶21.

Defendants ACSB and PCSB, in contrast, are on a 10-month payroll cycle for all or most of their union-represented employees, reflecting the K-12 school year. Blankenbaker Decl. ¶11; Second Roeder Decl. ¶6. For that reason, payroll has been largely dormant the past month at those employers, but a full payroll will resume in August. Blankenbaker Decl. ¶¶15-16. Were it not for Section 3 and PERC's intention to enforce it, that payroll would include dues deduction and remittances to ACEA and PCTA. But, because of Section 3 and PERC's enforcement plans, employers ACSB and PCSB will stop honoring their contracts' payroll deduction provisions absent an injunction, leaving the unions without their principal source of revenue. *Id.* ¶16; Dkt. No. 15-5, Ward Decl. ¶¶17, 20.

This means that the harm caused by Section 3 will soon seriously intensify, for when K-12 teachers return to the classroom beginning in August, the Union Plaintiffs will need much greater financial resources to provide contract-administration and other services to members. But the resources those unions budgeted for in reliance on their CBAs will not be forthcoming, because, despite

---

[2] FEA receives dues remittances as a third-party beneficiary of CBAs to which its local affiliates are signatories. Dkt. No. 15-4, Ortiz Decl. ¶13.

ongoing efforts to convert members from payroll deduction to an eDues

alternative, only approximately 57% of FEA members have been enrolled in

eDues, leaving a massive budget gap. Second Roeder Decl. ¶7; *see also id.* ¶9

(showing eDues enrollment rates of 60%, 52%, 43%, and 0% for ACEA, UFF,

PCTA, and HUSW, respectively). The upshot is that, by cutting off payroll

deduction, Section 3 is poised to "financially strangle the organizations" just when

they need the dues revenues most. *Florida Pub. Emps. Council 79*, 31 FPER ¶ 257,

2005 WL 6712050 (Dec. 23, 2005).

    **C.**    **Facts Concerning the Merits**

    The Court is already familiar with SB256 and the fact that it leaves prior

Florida labor relations law intact as to unions representing police, correctional, and

fire employees (the "favored unions") while imposing a series of new burdens on

unions, such as the Union Plaintiffs, who represent other Florida public employees

(the "disfavored unions"). Dkt. No. 45 at 1-3, 4, 7-8. Plaintiffs therefore begin by

recounting only those facts relating to the burden on disfavored unions relevant to

the instant motion—the facts relating to Section 3's ban on the payroll deduction of

dues for employees represented by the disfavored unions.

    The Union Plaintiffs all have current, unexpired CBAs that contain

provisions requiring the contracting employer to deduct and remit voluntary

membership dues to the Unions. First Gothard Decl. Ex. 1 ("UFF CBA") §§5.1-

5.8; Ward Decl. Ex. 2 ("ACEA CBA") art. V, §4; Blankenbaker Decl. Ex. 1 ("PCTA CBA") Art. 40(A-D); Burnett Decl. Ex. 1 ("HUSW CBA") Art. VI §§1-7. Each CBA expires between 2024 and 2026. UFF CBA §33.1 (2024); ACEA CBA Art. I §1 (2024); PCTA CBA Art. 6 (2025); HUSW CBA (2026).

Each of the CBAs also has a savings or severability clause stating that invalidation of one provision of the CBA will not cause invalidation of the entire CBA. UFF CBA Art. 32; ACEA CBA Art. I §3; PCTA CBA Art. 1.A; HUSW CBA Art. I §4. As explained below, even when a CBA lacks a severability clause, the default rule is that collective bargaining agreements are severable. *See infra* Part II.A.2. The savings clauses in the CBAs at issue here are all generic, meaning that they neither identify any particular provision of the CBA as vulnerable to invalidation nor identify any particular topic of legislation (including legislation affecting dues deduction) as one that the parties anticipate might be addressed by the Legislature during the CBA's term. The clauses therefore do not differentiate these CBAs from ordinary CBAs entitled to full Contracts Clause protection.

## ARGUMENT

To obtain a preliminary injunction the moving party must show that: (1) "it has a substantial likelihood of success on the merits"; (2) "irreparable injury will be suffered unless the injunction issues"; (3) "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing

party"; and (4) "if issued, the injunction would not be adverse to the public interest." *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017). Before addressing the evidence on each preliminary injunction factor, Plaintiffs begin by showing that they now unquestionably have Article III standing to obtain the relief sought by the instant motion.

## I.   Plaintiffs Have Standing to Seek an Injunction Against Section 3's Impairment of Their Collective Bargaining Agreements.

"'To have a case or controversy, a litigant must establish that he has standing,' which requires proof of three elements. *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019). The litigant must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d (1992)." *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020).

Here, the Court already has held that the Union Plaintiffs have suffered an injury by reason of Section 3. Dkt. No. 45 at 8 ("The challenged provision will nullify an express term of their collective bargaining agreements and eliminate the primary mode by which Plaintiffs currently collect union dues.").

With the addition of the public employers as defendants, it is now clear that the Union Plaintiffs easily satisfy the traceability and redressability elements as well. The Union Plaintiffs' loss of dues revenues is directly traceable to the Public

Employer Defendants' decision to stop remitting dues that, prior to Section 3's enactment, those employers were remitting as required by the express terms of their CBAs. Burnett Decl. ¶14. It is traceable as well to the fact the PERC Defendants have announced that they intend to enforce Section 3 even as applied to contracts in existence as of SB256's enactment. Dkt. No. 41-7 at 60CC-5.101. The traceability element is thus satisfied two times over.

The redressability element is now also clearly met, because the Court's concern that an injunction against PERC barring it from enforcing Section 3 might not induce a nonparty public employer to disregard Section 3 has now been fully addressed with the naming of the pertinent public employers as parties to the lawsuit, such that an injunction would run to them, and not just to PERC. *Cf. Jacobson*, 974 F.3d at 1254 (injunction against Secretary of State would leave county supervisors "lawfully entitled to print candidates' names on the ballot in the order prescribed by Florida law unless and until they are made parties to a judicial proceeding that determines otherwise"). Put another way, if the preliminary injunctive relief sought by Plaintiffs is granted, Plaintiffs will be put back in the precise same position as they would have been before Section 3 impaired their contracts: the agency in charge of enforcing PERA would not be threatening employers who honored the payroll-deduction provisions in their CBAs, and the

employers themselves would have no excuse predicated on Section 3 for refusing to honor them. That is a fully redressed Contracts-Clause injury.

In addition, and distinct from their desired injunction prohibiting the Public Employer Defendants from invoking Section 3 to ignore the dues deduction provisions in their CBAs, an injunction prohibiting PERC from enforcing Section 3 *as to Plaintiffs* will redress Plaintiffs' reasonable fear that they will face exposure to unfair-labor practice liability if they attempt to induce employers to honor their existing payroll-deduction provisions. *See* SAC Prayer for relief ¶(b). At present, if Plaintiffs, for example, were to initiate a grievance or arbitration proceeding against an employer that refused to honor a payroll deduction provision in a CBA, they would risk being held in violation of Fl. Stat. §447.501(2)(b). That is the provision of PERA that bars unions from "attempting to cause [a] public employer to violat[e] any of the provisions of" PERA Part II—a Part that includes §§447.201-447.609 and therefore encompasses Section 3, which is to be codified at §447.303. A reasonable fear of being subject to enforcement proceedings under a statute is a classic form of Article III injury that is traceable to the persons charged with enforcing the statute and redressable by enjoining such persons from doing so. *See Abbott Lab'ys v. Gardner,* 387 U.S. 136, 154 (1967); *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 302 & n.13 (1979); *Henry v. Attorney General, Alabama,* 45 F.4th 1272, 1288 (11th Cir. 2022).

In sum, Plaintiffs meet the elements of Article III standing as to their Contracts Clause challenge to Section 3.

## II.  Plaintiffs Are Likely to Succeed in Establishing that Section 3 Violates the Contracts Clause by Impairing Their CBAs.

With its jurisdiction under Article III established, the Court should exercise that jurisdiction to preliminarily enjoin Section 3, as Section 3 plainly violates the Contracts Clause.[3]

There are two elements of a Contracts Clause violation: first that the challenged legislation has caused a "substantial impairment" of the plaintiff's contract rights; and second that the legislation is not "drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen v. Melin,* 138 S. Ct. 1815, 1822 (2018) (internal quotations omitted).

There is no need for the Court to plow new ground here. The Sixth Circuit has twice applied these very elements to retroactive statutes that sought to ban

---

[3] In opposing Plaintiffs' first motion for a preliminary injunction, the PERC Defendants argued that 42 U.S.C. §1983 cannot be used to redress Contracts Clause violations. They are incorrect about that. *See* Dkt. No. 42 (Plaintiffs' Reply In Support of [First] Motion for Preliminary Injunction) at 11-16. But even if they were correct, the Supreme Court has squarely held that federal courts have jurisdiction to enjoin Contracts Clause violations under their inherent equitable powers, which a plaintiff may invoke in a direct enforcement action. *See id.* at 12-14. And Plaintiffs' Second Amended Complaint clearly and unequivocally invokes *both* §1983 *and* this Court's inherent equitable powers, *see* SAC ¶5, so the pleading technicality on which the PERC Defendants previously had relied is now moot.

payroll deduction provisions in existing collective bargaining agreements. And that court of appeals twice has concluded that the statutes violated the Contracts Clause, first in 1998 when the court, per Judge Boggs, struck down a 1995 Ohio statute, *Pizza*, 154 F.3d at 312; and then in 2017, when the court, per Judge Sutton, struck down a 2015 Michigan statute, *Schuette*, 847 F.3d at 805-06.

There is no authority to the contrary, which should be unsurprising, because *Pizza* and *Schuette* faithfully applied the Supreme Court's criteria both for determining when a contract impairment is substantial and for determining when an impairment is an appropriate and reasonable way to advance a significant and legitimate public purpose.

### A. Section 3 works a substantial impairment of Plaintiffs' Contracts Clause rights.

*1.* The first criterion for determining whether a contract impairment is substantial is "the extent to which the law undermines the contractual bargain." *Sveen*, 138 S. Ct. at 1822. Where even a single important provision of a contract is "totally eliminated," this criterion is satisfied. *United States Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 19 (1977) (complex municipal bond contract unconstitutionally impaired even though legislation repealed just one of many covenants set out in the contract, because "the [repealed] covenant was not superfluous … [n]or was [it] merely modified or replaced by an arguably

comparable security provision. Its outright repeal totally eliminated an important security provision and thus impaired the obligation of the States' contract.").

For this reason, the Sixth Circuit in *Pizza* held that a CBA was substantially impaired when its provision requiring the employer to deduct union members' political action committee contributions from payroll was "obliterate[d]," even though the balance of the contract was left intact. *Pizza*, 154 F.3d at 323. That the provision was important to the union was sufficient. *Id.* at 324.

The dues deduction provisions here are, if anything, *more* important to the Union Plaintiffs than the PAC contribution provisions at issue in *Pizza*. Membership dues, unlike PAC contributions, fund a union's basic representational activities for the benefit of all employees, member and nonmember alike. Indeed, PERC itself, in its role as adjudicator of unfair labor practice cases under PERA, has recognized the importance of dues checkoff, explaining that "an employer's act of ceasing dues deduction or failing to remit dues to an employee organization … allow[s] an employer to financially strangle the organization." *Florida Pub. Emps. Council 79*, 31 FPER ¶257, 2005 WL 6712050.

Consistent with that observation, the record evidence here establishes both that membership dues are, by far, the most significant source of operating revenue on which Plaintiffs depend, First Gothard Decl. ¶¶13-18, and that, prior to SB 256, the vast majority of all active-employee membership dues were paid via payroll

deduction, *id.* ¶18. As in *Pizza*, the unions "who negotiated the affected CBAs considered the promise by public employers to administer the checkoffs a significant and important aspect of their collective bargaining agreements." *Pizza*, 154 F.3d at 324. *See* First Gothard Decl. ¶9; Ward Decl. ¶9; Burnett Decl. ¶7; Blankenbaker Decl. ¶6. There thus can be no doubt that Section 3 meets the first substantiality criterion.

> **2.**    The second criterion for determining whether a contract impairment is substantial is whether it "interferes with a party's reasonable expectations." *Sveen*, 138 S. Ct. at 1822. The contracting parties' reasonable expectations must be measured "at the time of contracting." *Anderson Fed'n of Tchrs. v. Rokita*, 546 F. Supp. 3d 733, 745 (S.D. Ind. 2021). And here, the unrebutted evidence submitted by Plaintiffs establishes that Section 3 upset the contracting parties' reasonable expectation that the unions would be able to continue to use payroll deduction as the means of dues collection for the remainder of their CBAs. First Gothard Decl. ¶8; Ward Decl. ¶11; Burnett Decl. ¶9; Blankenbaker Decl. ¶8.

When they entered into these CBAs, neither the unions nor the public employers had reason to expect that the Legislature would impose a ban on the payroll deduction of dues, let alone a retroactive ban that would upset existing CBAs. The parties were negotiating against a backdrop of undisturbed state law

14

that, for decades, permitted certified representatives to reach binding agreements over dues deduction. *See Pizza*, 154 F.3d at 325 (impairment of payroll deduction unforeseeable where state failed to "point to any specific regulations that it claims placed the affected unions and workers on notice that their contractual right to wage checkoffs might be extinguished during the term of the CBAs").

Nor do the CBAs' severability clauses serve as evidence that the contracting parties foresaw that the Legislature would impose a ban on dues deduction during their CBA terms. None of the clauses refer to the prospect of legislation that might address the topic of dues deduction—or, for that matter, to the prospect of legislation on *any* substantive topic over which the parties negotiated. Each clause is generic in nature and simply includes words to the effect that, in the event that a provision in the CBA is held to be unlawful or unenforceable during its term, the remainder of the CBA remains lawful and enforceable. UFF CBA Art. 32; ACEA CBA Art. I §3; PCTA CBA Art. 1.A; HUSW CBA Art. I §4.

This kind of generic severability clause is not a waiver of either party's right to challenge specific mid-term legislation as unconstitutionally retroactive, nor does it have any bearing on whether a specific piece of retroactive legislation adopted during the term of a contract constitutes a substantial impairment. *See Cummings, McGowan & W., Inc. v. Wirtgen Am., Inc.*, 160 F. App'x 458, 462 (6th Cir. 2005) (rejecting argument that a generic savings clause reflected parties' intent

to incorporate retroactive impairments into their contracts); *Chiles v. UFF*, 615 So. 2d 671, 673 (Fla. 1993) (generic severability clause in CBA not a waiver of union's right to challenge specific retroactive legislation on constitutional grounds).

This rule has particular force in Florida, as its Supreme Court, when reviewing a predecessor CBA to one of those at issue in this case, specifically rejected the contention that savings clauses in public-sector labor contracts are "an escape hatch" for the Legislature that entitles it to "nullify" the agreements through otherwise-unconstitutional legislation. *Chiles*, 615 So .2d at 673. This state-law rule of CBA construction is "effectively incorporated into contracts, even if the parties have not expressly incorporated it." *Baltimore Teachers Union v. City of Baltimore*, 6 F.3d 1012, 1017 n.6 (4th Cir. 1993) (quoting *United States Tr.*, 431 U.S. at 19 n.17).

Indeed, to hold that the CBAs' severability clauses effectively foreclose Plaintiffs from exercising their Contracts Clause rights would be tantamount to holding that *no* CBA can be substantially impaired, because the severability clauses here merely restate a long-established default rule of construction applicable to all comprehensive CBAs, which is that the invalidity of a single provision does not invalidate the whole contract. That default rule applies even when there is no severability clause. *See, e.g.*, *Chattanooga Mailers Union, Loc. 92 v. Chattanooga News-Free Press Co.*, 524 F.2d 1305, 1313 (6th Cir. 1975)

(rejecting employer's bid to invalidate the whole CBA on the basis of a single

invalid provision even where CBA lacked severability clause); *Graphics*

*Commc'ns Int'l Union Loc. 121-C v. S. Coupon, Inc.*, 852 F. Supp. 970, 975 (N.D.

Ala. 1993) ("the illegality of one clause in a collective bargaining agreement does

not render the whole agreement invalid").[4]

   In sum, collective bargaining agreements have long been afforded the same

protection against impairment as other contracts.[5] And because the generic

severability or savings provisions in the CBAs here do nothing to differentiate

them from other collective bargaining agreements, it would be unwarranted to treat

---

[4] The savings clause in one of the four CBAs at issue here includes, in addition to a severability provision, a provision requiring the parties to bargain in good faith over the impact of any provision found illegal during its term. UFF CBA §32.2. That provision, too, simply restates a default rule that would be applicable even in the absence of a CBA clause addressing the point. *Palm Beach Jr. Coll. Bd. of Trustees v. United Fac. of Palm Beach Jr. Coll.*, 475 So .2d 1221, 1227 (Fla. 1985) (ULP to insist to impasse on clause that purported to waive union's midterm right to bargain about effects of employment changes); *Arizona Publ. Serv. Co.*, 247 N.L.R.B. 321, 325 (1980) (employer's refusal to bargain midterm over replacement for invalid subcontracting clause violated duty to bargain). Bargaining in good faith does not require that the parties reach an agreement. Fl. St. §447.203(14).

[5] *See, e.g.*, *Schuette*, *Pizza*, *Chiles*, and *Rokita*, *supra*. *See also AFSCME Loc. 2957 v. City of Benton*, 513 F.3d 874 (8th Cir. 2008); *Univ. of Hawai'i Prof. Assembly v. Cayetano*, 183 F.3d 1096 (9th Cir. 1999); *Ass'n of Surrogates v. State of NY*, 940 F.2d 766 (2d Cir. 1991).

these CBAs as subject to a standard different from the one courts historically have applied to such agreements.

    *c.*    The final criterion for determining the substantiality of an impairment is whether the challenged statute "prevents the party from safeguarding or reinstating his rights." *Sveen*, 138 S. Ct. at 1822. This criterion recognizes that legislation sometimes alters contract rights only conditionally and allows the adversely affected party a low-cost opportunity to restore the *status quo ante*—for example, by filing a notice document with the state within a reasonable grace period, *see Texaco, Inc. v. Short*, 454 U.S. 516, 518-19 (1982) (2-year grace period for preventing loss of mineral rights), or taking some other simple step, *see Sveen*, 138 S. Ct. at 1822-23 (filing a simple form substituting policyholder's preferred beneficiary for the statutorily presumed beneficiary). But SB256 is not that type of conditional legislation. SB256 bans payroll deduction unconditionally as to disfavored unions. It gives them no grace period or other opportunity to restore their rights. It therefore clearly flunks the third criterion.

    Notably, the third criterion does *not* inquire into the ability of a party to partially *mitigate* the damage caused by an unconstitutional deprivation of rights; it inquires only into the ability of a party to easily prevent the deprivation of rights from happening in the first instance, or from becoming final in the event there is a provisional deprivation. Thus, it is of no moment that that the Union Plaintiffs here

have some ability, through eDues signups, to partially mitigate the losses caused by Section 3's deprivation of their contract rights. To hold otherwise would be like saying that a statute that abrogated a CBA by deferring certain wage payments past the contractually specified payroll dates did not substantially impair rights because the employees could take out loans or moonlight during the lag period to tide themselves over. *Cf. Ass'n of Surrogates v. State of NY*, 940 F.2d 766 (2d Cir. 1991) (delayed payment constituted a substantial and unconstitutional impairment). Because there is no warrant in the case law for treating mitigation of damages as equivalent to a restoration of rights, all three of the criteria used to evaluate the substantiality of an impairment point in the same direction: Section 3 substantially impairs the contract rights of the disfavored unions.

**B.    Retroactive impairment of Plaintiffs' CBAs is not reasonable and necessary to achieve the State's professed interest in transparency.**

Because the impairment here is substantial, the inquiry turns to the second element: "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Sveen*, 138 S. Ct. at 1822 (quoting *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–412 (1983) ("*Kansas Power*")). At this step, the State bears the burden to show "a significant and legitimate public purpose" underlying the challenged Act. *See Heights Apartments, LLC v. Walz*, 30 F.4th 720, 730 (8th Cir. 2022). The State must show that its impairment is aimed at "remedying…a broad and general social

19

or economic problem," such that "the State is exercising its police power, rather than providing a benefit to special interests." *Kansas Power*, 459 U.S. at 412. And where, as here, the State is itself interested in the impaired contracts, courts apply greater scrutiny to the State's action and will not defer to the legislature's judgment as to reasonableness and necessity. *U.S. Tr. Co.*, 431 U.S. at 26-27.

Here, the legislative record itself identifies no public purpose for banning payroll deduction for disfavored unions, let alone for doing so at the expense of existing contractual rights. Indeed, it does not even appear that the Legislature even was aware that it was impairing existing contractual rights; SB256's sponsor stated in a floor colloquy that the bill would not apply to existing contracts. Dkt. No. 15-3, First McCulloch Decl. Ex. 7.

But even if a *post hoc* purpose could be considered, the only interest that the Defendants have proffered is the interest in "transparency," defined to mean the interest in making union members "fully aware of the dues amounts that they pay" and "how those dues are used." Dkt. No. 41 at 6. Therefore, to establish the required means-ends fit, Defendants must show that the impairment Section 3 causes is "appropriately and reasonably tailored" to serve that asserted transparency interest. *See Heights Apts.*, 30 F.4th at 730; *see also Pizza*, 154 F.3d at 323 ("Once it is determined that the state regulation is a substantial impairment …

the burden shifts to the state."). At this stage of the analysis, it is not merely the Defendants' burden to show that the interest underlying the State's action is good policy in the abstract. Rather, Defendants must establish that *the retroactive impairment itself* was reasonable and necessary to achieve that interest. *Pizza*, 154 F.3d at 325; *Schuette*, 847 F.3d at 804.

Defendants cannot carry this burden. To start, simply abolishing one method that public employees may use to pay voluntary dues bears no relation to the State's interest in informing public employees of how their dues are used. Neither before nor after the enactment of Section 3 did PERA's payroll deduction provisions require either unions or public employers to disclose anything about how dues are used. Thus, Section 3 does not further this aspect of the State's transparency interest at all.

Section 3 fares no better when evaluated against the State's asserted interest in informing public employees of the amount of dues they pay. Payroll deduction itself incidentally furthers this interest by generating a regular paystub that shows employees the amount of dues deducted from their paychecks in each pay period, and cumulatively throughout a given year. *See* Dkt. No. 42-1, Second Gothard Decl. ¶¶15-16 & Ex.4. Section 3 provides no transparency greater than that, for it permits automated alternatives like eDues that provide members with the same information about the amount of dues as the payroll-deduction system they are

replacing. Thus, because Section 3 does not advance even the *post hoc* purpose imputed to it, it would be a tall order for Defendants to justify Section 3 even if its operation were purely prospective. But there is no possible justification for Section 3's retroactive obliteration of existing contract rights.

Section 3's selective coverage underscores the lack of justification for its retroactivity. It nullifies only those CBA provisions negotiated by disfavored unions while exempting those negotiated by the favored unions representing the tens of thousands of police, fire, and corrections employees.[6] Florida cannot simultaneously allow voluntary payroll deduction to continue for favored unions and yet maintain that voluntary payroll deduction is a "broad" or "general" social or economic problem of the kind that can be addressed by impairing contracts. *See Kansas Power*, 459 U.S. at 412.

None of this is to say that Florida is disabled by the Contracts Clause from passing a prospective and uniform prohibition on public employee payroll deductions. "Certainly, the state is permitted to enact measures to deal with a newly discovered evil. But, the achievement of even a good goal (newly

---

[6] *See* https://www.bls.gov/oes/current/oes_fl.htm (Bureau of Labor Statistics data showing that, even excluding first-line supervisors, nearly 100,000 workers are employed in Florida as police and sheriff's patrol officers, firefighters, and correctional officers and jailers.).

discovered) can normally wait until existing contracts expire." *Pizza*, 154 F.3d at 326. And Florida has offered no justification for why Section 3 cannot wait.

### III. Plaintiffs Will Continue to Suffer Irreparable Harm if Section 3 Is Not Enjoined, and the Balance of the Harms and the Public Interest Favor Injunction.

#### A. Irreparable Harm

As Plaintiffs feared would happen when they filed their first Motion for Preliminary Injunction, the absence of any court order declaring Section 3 invalid or enjoining PERC from enforcing it has meant that their receipt of dues through payroll deduction ceased on or around July 1. As a result, the concrete harms that Plaintiffs laid out in support of their first motion have started to materialize. *See* Dkt. No. 15-1 at 30-31.

So far, the irreparable harm Plaintiffs have suffered from the loss of payroll deduction has been concentrated in the FEA affiliates that represent university faculty, such as Plaintiffs UFF and UFF-UF, and those that primarily represent education support professionals, such as Plaintiff HUSW, because many K-12 instructional teachers who do not work over the summer are paid on a 10-month schedule, meaning they do not receive salary payments and do not pay membership dues via payroll deduction over the academic summer. Second Roeder Decl. ¶6. That harm will imminently spread to the rest of FEA's affiliates, however, because, in much of Florida, the school year is set to begin in the first or second week of

August. *See, e.g.*, Alachua County Public Schools Academic Calendar (teacher development and planning days begin August 1, 2023; students' first day is August 10), *available at* https://www.sbac.edu/domain/9911; Blankenbaker Decl. ¶16. Once K-12 teachers return to work and begin to draw salary, Plaintiff Unions will face the full brunt of the loss of membership dues that had been paid via payroll deduction—exactly at the time when Union resources are most in need.

The harm that will be caused by that severe reduction in revenue is just as real and as irreparable as it was when Plaintiffs filed their first motion. Thus, although FEA-affiliated unions continue to make steady progress in convincing their members to enroll in an alternative dues-payment mechanism, over forty percent of members had not done so as of July 14, 2023. Second Roeder Decl. ¶7. As those members begin or continue to miss payments, there is no realistic possibility that the unions will be able to collect past-due amounts. *See Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) (risk of irreparable harm existed when state action impedes the collection of many small payments with "no guarantee of eventual recovery."). In addition, there is no prospect that the Plaintiff Unions will ever be able to recover the significant out-of-pocket costs they continue to expend in establishing and maintaining the eDues system. *See* Dkt. No. 15-5, First Roeder Decl. ¶¶7-10 (outlining the vendor and service fees required to operate the eDues platform).

24

It is well established that this type of serious reduction in net operating revenues constitutes irreparable harm. *See, e.g.*, *Odebrecht Constr., Inc. v. Fla. Dep't of Transp.*, 715 F.3d 1268, 1288 (11th Cir. 2013) (finding irreparable harm to construction contractor by enforcement of state contract bar where "almost its entire revenue stream would simply evaporate"); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of Am., Inc.*, 549 F.3d 1079, 1090 (7th Cir. 2008) (interim risk of "loss of property, employees … [or] damage to its goodwill" constituted irreparable harm), *abrogation recognized on other grounds*, *Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020).

Finally, the Eleventh Circuit has recognized that, although financial harm is not irreparable when it can be remedied through a damages award, financial harm *is* irreparable when it is caused by the State, given that a plaintiff "has no monetary recourse against a state agency … because of the Eleventh Amendment." *Odebrecht Constr.*, 715 F.3d at 1289 (affirming preliminary injunction). That is the case here, which is why Plaintiffs will be forever left remediless for each missed

25

payroll deduction remittance during the pendency of this lawsuit.[7]

## B. Balance of the Harms and the Public Interest

With respect to the final two equitable factors, there can be no denying that Plaintiffs will be more seriously injured by the absence of an injunction than Defendants or the public will be by its issuance. Plaintiffs are already suffering from a reduction in irreplaceable revenue that is about to get much worse. Part III.A, *supra*. In contrast, Defendants stand to lose nothing if the injunction issues, other than the "nebulous, not easily quantified harm of being prevented from enforcing one of its laws." *Odebrecht Constr.*, 715 F.3d at 1289.

Plaintiffs, after all, are not seeking in this motion to forever forestall the State's planned prohibition of payroll deduction. All the Plaintiffs seek is a reasonable period of the time—the remainder of their unexpired contracts—to adjust to a sea change in the way public-employee unions are financed in Florida.

---

[7] While the defendant school boards are not arms of the State of Florida, they are acting pursuant to a policy mandated by the State of Florida, not their own policy, in ceasing to honor their dues deduction obligations. They would therefore likely have a defense to a damages action sought against them as local government bodies. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978) (municipalities and other local political subdivisions can be held liable in damages for a constitutional violation only when acting pursuant to municipal law or policy); *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) (municipality not liable for violation where it was compelled to act by state law and was not following its own policy); *cf. Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005) (where municipality had discretion not to enforce a state statute, it was subject to liability for a constitutional violation for choosing to enforce it).

That is what the Contracts Clause exists to do: it "enable[s] individuals to order their personal and business affairs according to their particular needs and interests." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245 (1978). "Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them." *Id.*

In these circumstances, it serves the public interest to give effect to Plaintiffs' CBAs, enabling the unions and union members who have relied on the payment of voluntary dues via payroll deduction a full opportunity to adjust to a new regulatory regime. The fact that the Legislature was willing to allow the favored unions to continue with dues deduction indefinitely undermines any notion that serious harm would result from allowing disfavored unions to receive dues deductions for the time remaining in their CBAs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Second Motion for a Preliminary Injunction should be granted.

Respectfully submitted,

*/s/* Leon Dayan
LEON DAYAN

On behalf of:

LEON DAYAN*
(DC Bar ID 444144)
ldayan@bredhoff.com
ADAM BELLOTTI*
(DC Bar ID 1020169)
abellotti@bredhoff.com
KARA A. NASEEF*
(DC Bar ID 1671394)
knaseef@bredhoff.com
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Suite 1000
Washington, D.C. 20005
(202) 842-2600

MARTIN F. POWELL
mpowell@meyerblohmlaw.com
Florida Bar No. 70317
Meyer, Blohm and Powell, P.A.
403 East Park Avenue
Post Office Box 1547 (32302)
Tallahassee, Florida 32301
(850) 878-5212

KIMBERLY C. MENCHION
kimberly.menchion@floridaea.org
Florida Bar No. 425613
Florida Education Association
213 South Adams Street
Tallahassee, Florida 32301
(850) 224-7818

ALICE M. O'BRIEN**
aobrien@nea.org
PHILIP A. HOSTAK*
phostak@nea.org
National Education Association
1201 16th Street N.W.
Washington, D.C. 20036
(202) 822-7035

MARK H. RICHARD
mrichard@phillipsrichard.com
Florida Bar No. 305979
Phillips, Richard & Rind, P.A.
9360 S.W. 72nd Street, Suite 283
Miami, Florida 33173
(305) 412-8322

DANIEL J. MCNEIL**
dmcneil@aft.org
American Federation of Teachers
555 New Jersey Avenue, N.W.
Washington, D.C. 20001
(202) 879-4400

FAITH E. GAY
fgay@selendygay.com
Florida Bar No. 129593
MAX SIEGEL*
msiegel@selendygay.com
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, New York 10104
(212) 390-3000

* Admitted *pro hac vice*
** Admission *pro hac vice forthcoming*

*Counsel for Plaintiffs*

## RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), undersigned counsel for the Plaintiffs certifies that the foregoing Plaintiffs' Memorandum in Support of Their Second Motion For Preliminary Injunction, excluding those portions excluded by Local Rule 7.1(F), consists of 6444 words.

<u>/s Leon Dayan</u>
Leon Dayan

Dated: July 19, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2023, I electronically filed the

foregoing via CM/ECF, which automatically serves all counsel of record for the

parties who have appeared. I also have caused a true copy of the foregoing Second

Motion for a Preliminary Injunction, the accompanying Plaintiffs' Memorandum in

Support of Preliminary Injunction, and all supporting documents to be served by

overnight mail, or, with the consent of the receiving party, via email, upon:

University of Florida, Chair and
Members of Board of Trustees
Office of the General Counsel
attn: Board of Trustees
123 Tigert Hall
PO Box 113125
Gainesville, FL 32611-3125

School Board of Alachua County
c/o School Board General Counsel
David Delaney
620 E. University Avenue
Gainesville, FL 32601

School Board of Pinellas County
c/o David Koperski
301 4TH St. SW Largo, FL 33770

School Board of Hernando County
c/o Kelly Progue, Secretary to
General Counsel
919 North Broad Street
Brooksville, FL 34601

/s *Leon Dayan*
Leon Dayan