23-CI-00343

# COMMONWEALTH OF KENTUCKY
# FRANKLIN CIRCUIT COURT
# DIVISION II

### CIVIL ACTION No. 23-CI-00343

| | |
|---|---|
| **KENTUCKY EDUCATION ASSOCIATION, et al.** | **PLAINTIFFS** |
| vs. | |
| **JAMIE LINK, in his official capacity as Secretary of Education and Labor Cabinet pursuant to KRS 151B.017, et al.** | **DEFENDANTS** |

### OPINION AND ORDER

This matter is before the Court on Plaintiffs' *Motion for Summary Judgment*; Defendant, Commonwealth of Kentucky by and through Attorney General Daniel Cameron's *Cross-Motion for Summary Judgment*; and Defendant, Nicholas County Schools' *Motion for Summary Judgment*.[1] This matter was called before the Court on Wednesday, August 23, 2023. Upon review of the parties' briefs and papers, and after being sufficiently advised, the Court hereby **GRANTS** Plaintiffs' *Motion for Summary Judgment*; **DENIES** Defendant, Commonwealth of Kentucky by and through Attorney General Daniel Cameron's *Cross-Motion for Summary Judgment*; and **DENIES** Defendant, Nicholas County Schools' *Cross-Motion for Summary Judgment*.

### STATEMENT OF FACTS

During the 2023 Regular Session, the General Assembly introduced various bills, including Senate Bill 7 (R.S. 2023) ("SB 7") and House Bill 364 (R.S. 2023) ("HB 364").

---

[1] By Order entered July 12, 2023, Superintendent Dough Bechanan, in his official capacity as Superintendent of the Nicholas County Schools, was substituted as a Defendant in place of Nicholas County Schools.

HB 364 was crafted to prohibit all public employers from deducting from an employee's wages membership dues for any labor organization, required labor organizations to provide certain financial records annually to members, and imposed a financial penalty on public employers and labor organizations for each offense of the bill's provisions. SB 7, "AN ACT relating to the administration of payroll systems and declaring an emergency," as introduced, would have prohibited all public employers from deducting amounts from an employee's wages that were to be spent on "political activities," but permitted all public employers to deduct from an employee's wages membership dues for labor organizations, and also imposed a financial penalty on public employers and labor organizations for each offense of the bill's provisions. SB 7 passed the Senate and moved to the House where a committee substitute was introduced, which became the final and enacted version of SB 7.

In sum, the final version of SB 7 was enacted to avoid "the appearance that public resources are being used to support partisan political activity." SB 7, Section 9. ==The act prohibits most public employers from allowing their employees to use payroll deduction to pay dues to labor organizations. KRS 336.134. However, the bill has specifically exempted certain labor organizations from this prohibition, namely, labor organizations "which primarily represent public employees working in the protective vocations of active law enforcement officer, jail and corrections officer, or active fire suppression or prevention personnel." KRS 336.180(10).== Section 3 of SB 7 creates a new section of KRS Chapter 336 to prohibit public employers from assisting "directly or indirectly, any labor organization, person, or other legal entity with the collection of dues, fees, assessments, or other charges, or political activities or personal information related to those activities." SB 7, Section 3. Section 5 of SB 7 amends KRS 336.135 to require all labor organizations,

Entered  Case 1:23-cv-00111-MW-HTC   Document 97-20   Filed 09/05/23   Page 3 of 15
Case 1:23-cv-00111-MW-HTC   Document 94-1   Filed 08/30/23   Page 4 of 16
23-CI-00343        08/30/2023              Kathryn Marshall, Franklin Circuit Clerk
23-CI-00343

absent the exempted labor organizations found in KRS 336.180(10), to provide their members with financial records on an annual basis that of the labor organization's quarterly expenses. Section 6 of SB 7 amends KRS 161.158 to prohibit district boards of education from deducting membership dues of an employee organization, membership organization, or labor organization, except for an exempted labor organizations as found in KRS 336.180(10). Section 8 of SB 7 amends KRS 336.990 to provide for a financial penalty to be assessed to public employers and labor organizations between $100 to $1,000 for each violation of the prohibitions contained in Sections 1-7 of SB 7, but again exempts the labor organizations listed in KRS 336.180(10).

On March 15, 2023, the House passed the amended version of SB 7, and on March 16, 2023, the Senate concurred in the changes. On March 27, 2023, Governor Andy Beshear vetoed SB 7, in its entirety, for reasons including finding SB 7 to be special legislation; that SB 7 has potential "First Amendment implications, stifling public employees' freedom of speech;" that SB 7 is an attack on unions and teacher associations; that enactment of SB 7 would jeopardize over $76 million in federal transit funds for the Commonwealth in fiscal year 2023; and that SB 7 has such overbroad language that it could be further interpreted to "prohibit payroll deductions for dental and vision insurance providers, financial service firms, and charitable organizations." Veto Message, SB 7 (March 27, 2023). On March 29, 2023, the House and the Senate overrode Governor Beshear's veto and SB 7 became law effective immediately due to the emergency clause contained within.

On April 17, 2023, Plaintiffs, a collection of teachers unions, initiated this action to challenge the constitutionality of SB 7 under Sections 2, 3, and 19 of the Kentucky

Constitution and also moved for injunctive relief. This matter was initially assigned to Division I of the Franklin Circuit Court. On May 1, 2023, Division I held a hearing on Plaintiffs' *Motion for Temporary Injunction*. On May 30, 2023, before issuing a ruling on Plaintiffs' request for injunctive relief, Division I recused from this matter and transferred the case to the undersigned. As noted at the August 23, 2023, hearing, the undersigned only became aware that Plaintiffs had moved for injunctive relief at the August 23, 2023, hearing. Further, at the August 23, 2023, hearing, the Court heard argument on the parties' cross-motions for summary judgment and Plaintiffs informed the Court of a need for a ruling prior to September 1, 2023.

### STANDARD OF REVIEW

Summary judgment is appropriate when the Court concludes that no genuine issue of material fact for which the law provides relief exists. CR 56.03. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.01.

The moving party bears the initial burden of showing the non-existence of a genuine issue of material fact, and the burden then shifts to the opposing party to affirmatively show the absence of a genuine issue of material fact. *Jones v. Abner*, 335 S.W.3d 471, 475 (Ky. Ct. App. 2011). The movant will only succeed by showing "with such clarity that there is no room left for controversy." *Steelvest, Inc. v. Scansteel Service Ctr.*, 807 S.W. 2d 476, 482 (Ky. 1991). "The inquiry should be whether, from the evidence on record, facts exist which would make it possible for the non-moving party to prevail. In

Case 1:23-cv-00111-MW-HTC   Document 97-20   Filed 09/05/23   Page 5 of 15
Case 1:23-cv-00111-MW-HTC   Document 94-1   Filed 08/30/23   Page 5 of 15
Entered                23-CI-00343          08/30/2023             Kathryn Marshall, Franklin Circuit Clerk

the analysis, the focus should be on what is of record rather than what might be presented at trial." *Welch v. Am. Publ'g Co. of Kentucky*, 3 S.W.3d 724, 730 (Ky. 1999). In reviewing Motions for Summary Judgment, the Court views all facts in the light most favorable to the non-moving party and resolves all doubts in its favor. The Court will only grant summary judgment when the facts indicate that the nonmoving party cannot produce evidence at trial that would render a favorable judgment. *Steelvest*, 807 S.W. 2d at 480.

The Court recognizes that the summary judgment is a device that should be used with caution and is not a substitute for trial. "[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Jones v. Abner*, 335 S.W.3d at 480. Thus, this Court finds that summary judgment will be proper when it is shown with clarity from the evidence on record that the adverse party cannot prevail, as a matter of law, under any circumstances.

## ANALYSIS

### I. Plaintiffs have Standing and this Court is the Proper Venue

Superintendent Bechanan has alleged that Plaintiffs lack standing to bring this action and even if Plaintiffs had standing, that this Court is not the proper venue for this action. The Court will first address the issue of standing. At the federal level, the United States Supreme Court has established three (3) requirements that must be met to demonstrate associational standing:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit.

*Commonwealth, ex. rel. Brown v. Interactive Media Entertainment and Gaming Association*, 306 S.W.3d 32, 38 (Ky. 2010) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1997) (internal quotation marks omitted)). Although the Kentucky Supreme Court has not formally adopted the entirety of this three (3)-part test, it has held that "at least the first requirement must apply." *Id*.

In *City of Ashland v. Ashland F.O.P. No 3*, 888 S.W.2d 667, 668 (Ky. 1994), the Kentucky Supreme Court found that the Fraternal Order of Police had standing to challenge a city ordinance because its members—the police—had a "real and substantial interest" in striking the ordinance. In this action, Plaintiffs, labor organizations for teachers, have a "real and substantial interest" in striking down SB 7, which Superintendent Bechanan is directly blocking through enforcement of SB 7, and the Attorney General is defending the constitutionality of. More specifically, Plaintiff, the Nicholas County Education Association, represents over twenty (20) teachers employed in Nicholas County and has a unified membership with co-Plaintiff, Kentucky Education Association. The Court finds that each of those individual members would have standing to sue in their own right.

Although the Kentucky Supreme Court has not formally adopted the second and third prongs of the federal test for associational standing, because Plaintiffs have met the first element for associational standing, the Court feels compelled to assess whether Plaintiffs meet the remaining elements. The Court finds that Plaintiffs have satisfied the second prong, as the purpose of both organizations is to serve as support and advocate for teachers. Finally, Plaintiffs have met the third prong because "neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *Id*.

Case 1:23-cv-00111-MW-HTC   Document 97-20   Filed 09/05/23   Page 7 of 15
Case 1:23-cv-00111-MW-HTC   Document 94-1   Filed 08/30/23   Page 8 of 16

Entered        23-CI-00343        08/30/2023              Kathryn Marshall, Franklin Circuit Clerk

Turning to the issue of venue, the Court finds that Franklin County is the proper venue for this action. Plaintiff, the Kentucky Education Association, has its principal place of business in Franklin County.

> A plaintiff who is a resident of Kentucky shall file a complaint or petition in the office of the Circuit Court clerk in the county where the plaintiff resides. If more than one (1) plaintiff is a party to the action, the complaint or petition may be filed in any county where any plaintiff resides.

KRS 452.005(2)(a). Thus, because Plaintiffs have brought a constitutional challenge in the county in which a plaintiff resides, this Court is the proper venue for this action and the Court has jurisdiction to decide this controversy.

## II.     Acts of the General Assembly are Presumed Constitutional

Acts of the General Assembly are given a "strong presumption of constitutionality." *Wynn v. Ibold, Inc.*, 969 S.W.2d 695, 696 (Ky. 1998). Thus, a party challenging a duly enacted statute by the General Assembly is faced with the burden of proving the challenged act unconstitutional. *Id*. To declare an act unconstitutional, the constitutional violation "must be clear, complete and unmistakable." *Ky. Indus. Until. Customers, Inc. v. Ky. Utils. Co.*, 983 S.W.2d 493, 499 (Ky. 1998). The Court is bound to resolve "any doubt in favor of constitutionality rather than unconstitutionality." *TECO/Perry Cty. Coal v. Feltner*, 582 S.W.3d 42, 45 (Ky. 2019) (citations omitted). Moreover, a facial challenge, as has been mounted here, is "the most difficult challenge to mount successfully" as Plaintiffs "must establish that no set of circumstances exists under which the [act] would be valid." *Williams v. Commonwealth*, 213 S.W.3d 671, 681 (Ky. 2006) (quoting *Rust v. Sullivan*, 500 U.S. 173, 183 (1991)).

### III.  Equal Protection

"Citizens of Kentucky enjoy equal protection of the law under the 14th Amendment of the United States Constitution and Sections 1, 2, and 3 of the Kentucky Constitution." *Zuckerman v. Bevin*, 565 S.W.3d 580, 594 (Ky. 2018) (citing *D.F. v. Codell*, 127 S.W.3d 571, 573 (Ky. 2003)). "The goal of equal protection provisions is to 'keep [] governmental decisionsmakers from treating differently persons who are in all relevant respects alike.'" *Id*. (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). There are three (3) levels of review for equal protection claims: strict scrutiny, intermediate scrutiny, and rational basis. When a statute affects a fundamental right, it is "sustainable only if the statute is suitably tailored to serve a 'compelling state interest.'" *Steven Lee Enters. v. Varney*, 36 S.W.3d 391, 394 (Ky. 2000). The seldom-applied intermediate scrutiny "applies to quasi-suspect classes, such as gender or illegitimacy" and a statute is upheld under this standard if it is "'substantially related to a legitimate state interest.'" *Zuckerman*, 565 S.W.3d at 595 (quoting *Varney*, 36 S.W.3d at 394)). "On the other hand, 'if the statute merely affects social or economic policy, it is subject only to a 'rational basis' analysis.'" *Codell*, 127 S.W.3d at 575 (quoting *Varney*, 36 S.W.3d at 394)). In this action, there is no question that Plaintiffs are merely entitled to a rational basis review.

In *Varney*, the Kentucky Supreme Court quoted at length from the United States Supreme Court "[t]he best summary of what rational basis analysis entails and what it does not entail:"

> We many times have said, and but weeks ago repeated, that rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. Nor does it authorize the judiciary to sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect

> lines. For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.
>
> A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. A statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative ever conceivable basis which might support it, whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.

36 S.W.3d at 395 (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 319-21 (1993) (internal quotations and ellipses omitted)). Accordingly, this Court must affirm "[a] classification by the legislature…unless it is positively shown that the classification is so arbitrary and capricious as to be hostile, oppressive and utterly devoid of rational basis." *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet*, 689 S.W.2d 14, 18 (Ky. 1985).

Plaintiffs primarily draw the Court's attention to *Burrow v. Kapfhammer*, 145 S.W.2d 1067 (Ky. 1940), in which an act of the General Assembly was struck down for lack of a rational basis for its classification decision. In *Burrow*, a challenge was made to an act of the General Assembly that created different wage and hour rules for freestanding restaurants and hotel dining rooms. *Id*. at 1069. Essentially, the bill exempted hotel dining

rooms from the more stringent regulation. *Id*. In affirming the Franklin Circuit Court, the former Kentucky Court of Appeals noted, "that it is competent for legislatures to classify subjects for legislation, provided [] the classification is based upon reasonable grounds and is not arbitrary." *Id*. at 1070. The former high court further opined on the role of the judiciary in assessing the alleged arbitrariness of a classification:

> In determining whether or not a particular classification is or not sustainable under such firmly settled principles of the law applicable to the subject courts look to and consider the alleged differential facts put forward as supporting the classification, and if it is found that there is no practical difference, and that by reason thereof the classification is arbitrary, it then becomes the duty of the court to do declare and to hold the contested enactment as invalid because invading the equal rights clause and other of either the Federal or State Constitutions, or of both. Nor only so, but is has been more than once in later times been observed by this and other courts that the practice of classification is frequently attempted to be exercised and applied in contravention of the settled requirement, supra., and to such an extent as to be plainly arbitrary and unsupported by either logic or reason.

*Id*. at 1070-71. Ultimately, the *Burrow* Court found the classification between freestanding restaurants and hotel dining rooms arbitrary because there was no logical distinction between the services performed by those engaged in the hotel dining business and freestanding restaurants, and therefore, struck down the act as it resulted in forbidden discrimination. *Id*. at 1071-72.

In contrast, the Kentucky Supreme Court, in *TECO*, found a rational basis for the General Assembly's classification for treating workers' compensation hearing loss claimants differently from other types of traumatic injury claimants. 582 S.W.3d at 44. The statute at issue denies income benefits to hearing loss claimants unless their binaural impairment is at least 8%, while other types of non-hearing loss traumatic injury claimants do not have to meet the 8% threshold to receive income benefits. *Id*. In finding a rational

basis for this classification, the Kentucky Supreme Court concluded that the statute meets the goal of ensuring claimants receive income benefits when their injury is work-related. *Id*. at 48. More specifically, the high court opined that the statute "follows the *Guides'* approach for not subtracting age-related hearing loss from an impairment rating and thus sets a threshold of 8%"...which "all but guarantees that hearing-loss claimants who meet the threshold have work-related, not just age-related, hearing loss." *Id*.

The Court would be remiss not to briefly mention the *Zuckerman* case, which began in this Court. *Zuckerman* involved a challenge to Kentucky's "Right to Work Act," which "amended KRS 336.130(3) to provide that no employee is required to become, or retain, a member of a labor organization, or to pay dues, fees, or assessments to a labor organization." 565 S.W.3d at 586. A challenge was brought before this Court that the Right to Work Act violated the Kentucky Constitution's guarantee of equal protection, was special legislation, resulted in takings without just compensation, and was improperly designated as emergency legislation. *Id*. The undersigned held the Right to Work Act constitutional in all respects. On transfer, in a 4-3 decision, the Kentucky Supreme Court affirmed this Court's holding.[2] When assessing the equal protection claim raised, the high court found a rational basis for the General Assembly's classification between union and non-union workers given the General Assembly's right to set the economic policy for the Commonwealth. *Id*. at 597-98. The Kentucky Supreme Court noted the Right to Work Act's goals "to promote economic development, to promote job growth, and to remove Kentucky's economic disadvantages in competing with neighboring states" and the

---

[2] In reviewing *Zuckerman*, the Court is particularly compelled by Justice Keller's dissent in which she discussed the purpose of the 1891 Constitutional Convention at which the barring of special legislation for special interest groups was a priority for our Constitution's drafters.

General Assembly's policy making right to enact legislation that "might result in more jobs" which "might benefit the overall economic climate of Kentucky." *Id.* at 598.

Turning to the act at hand, the Attorney General offers that the classification provided for in SB 7 "is rationally related to the legislature's repeated recognition that some professions are simply more dangerous than others," thus, "it is rational to conclude that labor organizations 'primarily' representing employees in the protective vocations would be more focused on the unique challenges those employees face, as opposed to labor organizations advocating on behalf of a larger class of employees with jobs that do not carry similar concerns or risks." AG Response at 8-9. Meanwhile, Plaintiffs assert that the classification is arbitrary and does not turn on a distinction found elsewhere in Kentucky law, but instead focuses on distinguishing between favored and non-favored labor organizations. The Court agrees with Plaintiffs and finds that the classification lacks a rational basis and is akin to the classification made in *Burrow*—one where groups performing the same services were treated differently. The Court understands, for example, that Kentucky's retirement structure provides different classifications for hazardous and nonhazardous employees, which is made on an individual basis, with different payment structures, timelines, etc., but the classification provided for in SB 7 is one that can best be summed up as favoritism for certain labor organizations performing the same services as the non-exempted labor organizations. The Court wholly accepts that the Commonwealth has a compelling interest in avoiding the appearance that public resources are being used to support partisan political activity, but SB 7 does not fit this goal as it has instead allowed the General Assembly to arbitrarily select which labor organizations get to participate in the "optic" of using public resources to support partisan political activity. Of note, SB 7

Entered    23-CI-00343    08/30/2023    Kathryn Marshall, Franklin Circuit Clerk

only excludes certain "protective vocation" labor organizations, thus, giving the Attorney General's attempted justification no credence. Accordingly, the Court holds that classification made in SB 7 "is so arbitrary and capricious as to be hostile, oppressive and utterly devoid of rational basis." *Delta Air Lines*, 689 S.W.3d at 18. As such, it is the duty of the Court to hold the law invalid. *Burrow*, 145 S.W.2d at 1071.

Because the Court has found that the classification made in SB 7 lacks a rational basis, the Court must assess whether to permanently enjoin the entirety of SB 7 or determine whether it is possible to sever the offending portions. KRS 446.090 provides:

> It shall be considered that it is the intent of the General Assembly, in enacting any statute, that if any part of the statute be held unconstitutional the remaining parts shall remain in force, unless the statute provides otherwise, or unless the remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the General Assembly would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing along, are incomplete and incapable of being executed in accordance with the intent of the General Assembly.

KRS 446.090. In reviewing SB 7, it is clear that the Court cannot sever, as Superintendent Bechanan has suggested, Section 1 of SB 7, because "the remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the General Assembly would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing along, are incomplete and incapable of being executed in accordance with the intent of the General Assembly." *Id*. The entirety of SB 7 has the purpose of enforcing the unconstitutional distinction made between labor organizations and to sever only a portion of SB 7 would subvert the intent of the General Assembly. Accordingly, the Court **PERMANENTLY ENJOINS** the entirety of SB 7.

### IV. Impairment of Contracts

Finally, the Court holds that it is unnecessary to reach Plaintiffs' argument that SB 7 violates Section 19 of the Kentucky Constitution. Because the Court has found that SB 7 violates Sections 2 and 3 of the Kentucky Constitution and is invalid in its entirety, the Court need not go further. Therefore, the Court declines to assess whether SB 7 violates Section 19 of the Kentucky Constitution.

**WHEREFORE**, Plaintiffs' *Motion for Summary Judgment* is **GRANTED**; Defendant, Commonwealth of Kentucky, *ex rel.* Attorney General Daniel Cameron's *Cross-Motion for Summary Judgment* is **DENIED**; and Defendant, Nicholas County Schools' *Cross-Motion for Summary Judgment* is **DENIED**. Senate Bill 7 (R.S. 2023) is hereby **PERMANENTLY ENJOINED**.

This order is final and appealable and there is no just cause for delay.

**SO ORDERED**, this 30th day of August, 2023.

/s/ HON. THOMAS DAWSON WINGATE
electronically signed
8/30/2023 11:56:50 AM ET

**THOMAS D. WINGATE**
**Judge, Franklin Circuit Court**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Order was mailed, this _____ day of August, 2023, to the following:

**Hon. Amy D. Cubbage**
**Hon. Marc G. Farris**
Tachau Meek PLC
PNC Tower, Suite 3600
101 S. Fifth Street
Louisville, Kentucky 40202-3120

**Hon. Alice O'Brien**
**Hon. Jeffrey Burritt**
National Education Association
1201 16th Street, NW
Washington, DC 20036-3290

**Hon. Oran S. McFarlan, III**
Education and Labor Cabinet
500 Mero Street, 3rd Floor
Frankfort, Kentucky 40601

**Hon. Victor B. Maddox**
**Hon. Christopher L. Thacker**
**Hon. Heather L. Becker**
**Hon. Aaron J. Silletto**
**Hon. Marc Manley**
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601

**Hon. Jonathan C. Shaw**
**Hon. Michael J. Schmitt**
**Hon. Grant R. Chenoweth**
Porter, Banks, Baldwin & Shaw, PLC
327 Main Street
P.O. Drawer 1767
Paintsville, Kentucky 41240

_____
**Kem Marshall, Franklin County Circuit Court Clerk**