## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**ALACHUA COUNTY EDUCATION
ASSOCIATION, et al.,**

      ***Plaintiffs,***

**v.**                                       **Case No.: 1:23cv111-MW/HTC**

**KEREY CARPENTER, et al.,**

      ***Defendants.***

_____/

### <u>ORDER ON THE MERITS</u>

Plaintiffs are public-sector unions representing public school faculty and staff and an individual member of one such union. They have challenged the State of Florida's recent "payroll deduction ban" for most public sector unions. Plaintiffs filed this action on May 9, 2023, against the members of the Florida Public Employees Relations Commission, in their official capacities (PERC Defendants), alleging that the State of Florida's new requirements for public sector unions violate their First and Fourteenth Amendment rights, along with their right to be free from state impairment of contracts pursuant to Article I, Section 10, Clause 1 of the United States Constitution. ECF No. 1.

Plaintiffs originally challenged three new provisions of Florida law—namely, the "membership authorization form" requirement, the "payroll deduction ban," and the new "recertification rules." Plaintiffs amended their complaint on May 11, 2023,

ECF No. 11, and moved for a preliminary injunction the following day, ECF No. 15. Following a hearing, this Court denied Plaintiffs' first motion for preliminary injunction for failure to demonstrate standing. ECF No. 45.

On July 14, 2023, Plaintiffs filed a second amended complaint, naming their public employers as additional defendants, ECF No. 48. And on July 19, 2023, Plaintiffs filed a second motion for preliminary injunction, ECF No. 63, seeking relief only with respect to their Contracts Clause claim. Following a second round of briefing, this Court denied Plaintiffs' second motion for preliminary injunction on September 22, 2023, finding that Plaintiffs had not demonstrated a substantial likelihood of success on the merits. ECF No. 106.

The parties proceeded to file cross-motions for summary judgment, ECF Nos. 98 and 116. On July 24, 2024, this Court entered an Order ruling on the cross-motions for summary judgment. ECF No. 154. This Court denied Plaintiffs' motion for partial summary judgment and granted in part the PERC Defendants' motion with respect to Counts III, V, VI, and VII. *Id*. Ultimately, this Court dismissed Counts I and II of Plaintiffs' second amended complaint for lack of standing, and dismissed Counts III, V, VI, and VII because the PERC Defendants prevailed at summary judgment. This Court denied the PERC Defendants' motion with respect to the only surviving claim, Count IV. Finally, this Court did not direct the Clerk to enter partial judgment with respect to the cross-motions for summary judgment.

Accordingly, this case was set for a bench trial on Plaintiffs' sole surviving claim, Count IV, which asserts that the payroll deduction ban, as applied to their existing collective bargaining agreements, violates the Contracts Clause of the United States Constitution. After a telephonic scheduling conference, this Court adopted the parties' proposed briefing schedule. ECF No. 157. This Court has now considered the parties' trial briefing as well as the arguments presented at the bench trial on October 24, 2024, and addresses Plaintiffs' claim.

I

Plaintiffs' sole surviving claim is a challenge to the payroll deduction ban as a violation of the Contracts Clause. Before this Court can consider the merits of Plaintiffs' Contracts Clause claim, this Court must first consider whether Plaintiffs have demonstrated standing to challenge the payroll deduction ban.

A

The Supreme Court has long held that an actual controversy exists when the parties have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Over time, the Supreme Court has developed a three-part test for determining when such adverseness exists. Under that test, a plaintiff must show (1) that they have suffered an injury in fact that is (2) fairly traceable to the defendant and that (3) will likely be redressed by a favorable ruling. *See Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992). "[E]ach element of standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.' " *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (quoting *Lujan*, 504 U.S. at 561). Thus, at summary judgment, "a plaintiff cannot 'rest on such mere allegations, [as would be appropriate at the pleadings stage,] but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.' " *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (some alteration in original) (quoting *Lujan*, 504 U.S. at 561).

Standing "is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Consequently, " 'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' " that is sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Likewise, a plaintiff must also demonstrate standing for each statutory provision challenged. *Harrell v. Fla. Bar*, 608 F.3d 1241, 1253–54 (11th Cir. 2010); *see CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271–73 (11th Cir. 2006) (holding a plaintiff "may challenge only provisions . . . that affects its activities"). That said, the standing requirement is satisfied so long as a single plaintiff has standing. *See Rumsfeld v. FAIR*, 547 U.S. 47, 53 n.2 (2006).

As discussed in this Court's order denying Plaintiffs' second preliminary

4

injunction motion, which this Court incorporates by reference herein, the Union Plaintiffs with CBAs have demonstrated an injury in fact—namely, the payroll deduction ban nullifies an express term of their CBAs. ECF No. 45 at 8. Under their CBAs, these Plaintiffs have a contractual right to dues deduction directly from employer payroll. The payroll deduction ban impairs the conditions of those CBAs because it prohibits this bargained-for method of dues deduction.

Notably, however, some of these Union Plaintiffs—namely, UFF/UFF-UF and ACEA—have seen their CBAs expire during the pendency of this litigation. *See* ECF No. 164 at 7 n.1. PERC Defendants assert these Plaintiffs' Contracts Clause claims are now moot inasmuch as the contracts at issue have expired. *Id*. This Court is not persuaded by Plaintiffs' argument that Plaintiffs' Contracts Clause claim is capable of repetition, yet evading review, and thus exempt from the mootness doctrine. *See* ECF No. 167 at 24 n.6. In short, this Court agrees with the PERC Defendants that UFF-UF's and ACEA's Contracts Clause claim are now moot given that the contracts at issue have expired.

Setting aside the Plaintiffs whose claims are now moot, the injuries of the remaining Union Plaintiffs with CBAs—namely, Lafayette Education Association, Pinellas Classroom Teachers Association, and Hernando United School Workers— are fairly traceable to the PERC Defendants. Likewise, these injuries are also fairly

traceable to the Public Employer Defendants[1] with whom these Plaintiffs have existing collective bargaining agreements. Under the challenged law, the Public Employer Defendants are now prohibited from deducting Plaintiffs' members' dues from their payroll, and unions that attempt to work with a public employer to deduct member dues directly from payroll commit an unfair labor practice. *See* § 447.501(2)(b) (naming as an unfair labor practice a union's "causing or attempting to cause [a] public employer to violate any of the provisions of this part"); § 447.303 (payroll deduction ban appears in the same part as above subsection). PERC processes charges of unfair labor practices and remedies violations when they have occurred. §§ 447.503, 447.207(6). Specifically, although PERC cannot bring charges of an unfair labor practice, *see* § 447.503(1), it evaluates the sufficiency of

---

[1] To be clear, the Public Employer Defendants include only the School Board of Pinellas County and the School Board of Hernando County. *See* ECF No. 48. Plaintiff Lafayette Education Association has not sued the public employer with whom it has a collective bargaining agreement—namely, the School Board of Lafayette County. Instead, in Plaintiffs' operative complaint, Plaintiffs simply allege that "non-Defendant Lafayette County School Board, which is a party to CBAs with Plaintiff Lafayette Education Association, will comply with the payroll deduction provisions of those CBAs if PERC is enjoined from enforcing [the payroll deduction ban]." *Id*. ¶ 77. However, this factual allegation is not sworn nor is it made in a verified complaint. And Plaintiffs did not file *any* evidence demonstrating that the non-party Lafayette County School Board would agree to deduct membership dues from payroll in the event the PERC Defendants are enjoined. Indeed, Plaintiffs apparently concede that Lafayette Education Association was added to this case "principally because of the impact of Section 4 of SB 256," rather than the payroll deduction ban now at issue. *See* ECF No. 63-1 at 9 n.1. Accordingly, absent any evidence demonstrating that this non-party public employer intends to restart payroll deductions if the PERC Defendants are enjoined, this Court cannot conclude that an Order solely enjoining the PERC Defendants would provide redress to Plaintiff Lafayette Education Association. Lafayette Education Association has failed to prove that it has standing with respect to Count IV, and its claim against the PERC Defendants is **DISMISSED without prejudice** for lack of standing.

the charges, determines whether an unfair labor practice has occurred, and, when it finds that one has occurred, can issue a cease-and-desist order and "take such positive action, including reinstatement of employees with or without back pay, as will best implement the general policies expressed in this part." § 447.503(2), (2)(a), (6)(a). Relevant here, PERC may decline to certify a union that has engaged in an unfair labor practice. *See* § 447.307(1)(b).

Finally, enjoining the PERC Defendants and the Public Employer Defendants from enforcing the payroll deduction ban would redress the injuries Union Plaintiffs with CBAs suffer. If the PERC Defendants could not enforce the ban, and Public Employers could no longer claim a statutory prohibition to payroll deduction, these unions could continue to have their member dues deducted directly from payroll during the remaining term of their existing collective bargaining agreements—all without the fear of an unfair labor practice charge, proceedings, and violation.

Accordingly, the remaining Union Plaintiffs with CBAs—namely, Pinellas Classroom Teachers Association and Hernando United School Workers—have established standing as to Count IV. Next, before turning to the merits, this Court must consider a second threshold issue—namely, whether Plaintiffs' Contracts Clause claim is properly before this Court.

B

Plaintiffs assert that the payroll deduction ban violates the Contracts Clause. Plaintiffs bring this claim under 42 U.S.C. § 1983 and under the Contracts Clause itself. ECF No. 48 ¶ 5. The PERC Defendants have argued that Plaintiffs cannot bring this claim under either section 1983 or the Contracts Clause. In its Order denying Plaintiffs' second motion for preliminary injunction, this Court held that Plaintiffs could, in fact, bring their Contracts Clause claim under section 1983.[2] ECF No. 106 at 9–17. This Court stands by its earlier reasoning and incorporates its analysis, *id.*, by reference into this Order. This Court incorporates by reference its additional analysis set out in its Order on the parties' cross-motions for summary judgment, ECF No. 154 at 31–32, as if fully set forth herein. Consistent with its prior analysis at ECF No. 154 at 31–32, this Court rejects the PERC Defendants' arguments concerning *Carter v. Greenhow*, 114 U.S. 317 (1885) and later decisions construing it. Plaintiffs' Contracts Clause claim is properly before this Court under section 1983.

---

[2] Because this Court held that Plaintiffs could bring their Contracts Clause claim under section 1983, this Court did not reach the question of whether Plaintiffs could bring it under the Contracts Clause itself. It need not, and so does not, reach that question here, either.

II

Turning to the merits, this Court must determine whether the payroll deduction ban unconstitutionally impairs the Plaintiffs' contracts inasmuch as their collective bargaining agreements provide for payroll deductions to collect union dues, and Florida law now prohibits this practice. The Constitution prohibits the States from passing "any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. The final clause quoted, known as the Contracts Clause, "applies to any kind of contract." *Sveen v. Melin*, 584 U.S. 811, 818 (2018). It is not, however, an absolute bar to legislation that affects contracts. Rather, the Constitution recognizes that contracts reflect parties' expectations about the future, and at times it may be necessary for a government to subordinate those expectations to the needs of the public's health, safety, and welfare. *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978) (explaining the Contracts Clause "does not operate to obliterate the police power of the States").

For a Contracts Clause claim,

> The threshold issue is whether the state law has operated as a substantial impairment of a contractual relationship. . . . If [it has], the inquiry turns to the means and ends of the legislation. In particular, the Court has asked whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose.

*Sveen*, 584 U.S. at 819 (cleaned up) (citations omitted).

This Court's inquiry has multiple layers. First, the parties do not dispute that each CBA binds its respective Union Plaintiff to its respective public employer and that the payroll deduction ban impairs their respective contractual relationships. Accordingly, this Court must consider "whether the impairment is substantial." *See Taylor v. City of Gadsden*, 767 F.3d 1124, 1133 (11th Cir. 2014) (citing *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)).

## A

Plaintiffs bear the burden of showing a substantial impairment of their contract rights. *See Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 307, 323 (6th Cir. 1998) ("This analytic framework first requires us to determine whether the complaining party has established that the challenged legislation in fact operates as a 'substantial impairment of a contractual relationship.' ") (citing *Energy Rsrvs. Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983)); *CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1279 (9th Cir. 2021) ("To establish a substantial impairment of a contractual relationship, a party must show, at a minimum, that a law effects an 'alteration of contractual obligations'—in other words, that it alters the rights or duties created by a contract . . . . In any event, CDK has not shown even that the statute impairs its ability to perform its contracts.") (citing *Spannaus*, 438 U.S. at 245); *see also Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504 (1987) ("Petitioners claim that they obtained damages waivers for a large

percentage of the land surface protected by the Subsidence Act, but that the Act removes the surface owners' contractual obligations to waive damages. We agree that the statute operates as a substantial impairment of a contractual relationship . . . .") (internal quotation marks omitted); *Vesta Fire Ins. Corp. v. Florida*, 141 F.3d 1427, 1433 (11th Cir. 1998) (proceeding to second step of Contracts Clause analysis after plaintiffs had "ma[d]e a sufficient showing that the Florida legislation substantially impaired the contracts . . . ."), *abrogation on other grounds recognized by South Grande View Devel. Corp. v. City of Alabaster*, 1 F.4th 1299 (11th Cir. 2021).

In determining whether an impairment is substantial, courts consider three factors—"the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 584 U.S. at 819 (citations omitted). As this Court concluded at the summary-judgment stage, ECF No. 154 at 54, the undisputed facts before this Court reveal that the payroll deduction ban (1) substantially undermines the contractual bargain the Union Plaintiffs with CBAs struck with their respective public employers, (2) does not substantially interfere with the reasonable business expectations of the Union Plaintiffs with CBAs, and (3) prevents the Union Plaintiffs with CBAs from safeguarding or reinstating their contract rights. Having considered these factors and the record before this Court, this Court finds that the payroll

deduction ban substantially impairs the CBAs. Accordingly, this Court turns to whether the payroll deduction ban is drawn in an appropriate, reasonable way to advance a significant, legitimate public purpose.

## B

As the PERC Defendants point out in their opening trial brief, ECF No. 164, three issues[3] remain for this Court's consideration—(1) whether a legitimate public purpose for the challenged provision appears in the record, (2) the applicable level of deference this Court should afford the challenged provision in conducting its tailoring analysis, and (3) whether the challenged provision survives review with respect to this tailoring analysis. This Court will address each issue in turn, starting with whether the PERC Defendants have identified a legitimate public purpose behind the payroll deduction ban and whether the record supports this purpose.

## 1

This Court previously stated that the PERC Defendants bear the burden of identifying a significant, legitimate public purpose for the payroll deduction ban and pointing to evidence in the legislative record showing that the Florida Legislature intended to further that purpose in enacting the payroll deduction ban. ECF No. 154 at 58–59. In their trial brief, the PERC Defendants assert that "transparency

---

[3] This Court recognizes that these three issues include nuances and sub-issues that will be discussed in more detail below.

motivated the prohibition on dues deduction" and provide specific statements in the legislative record made by SB 256's sponsors in support. ECF No. 164 at 9–10 (citing *S. Comm. on Fiscal Pol'y* 33:18, 37:23 (Mar. 16, 2023)) (explaining that eliminating automatic payroll deduction would force a conversation between the union member and their representative when the member pays union dues); *id.* (citing *S. Comm. on Gov't Oversight and Accountability* 50:09 (Mar. 7, 2023)) (similar); *id.* at 14 (citing *S. Comm. on Gov't Oversight and Accountability* 50:09, 2:32:09 (Mar. 7, 2023)) (explaining that the payroll deduction ban would allow union members to decide how to pay their dues and understand how much they were paying).[4]

Plaintiffs respond that transparency was not the actual purpose of the payroll deduction ban. Instead, Plaintiffs say, the payroll deduction ban was enacted for the purpose of ending the State's involvement in collecting and dispersing union dues. ECF No. 167 at 8. Notably, in their trial brief, Plaintiffs provide the context surrounding the statements that the PERC Defendants pulled from the legislative record, which tends to show that the payroll deduction ban was motivated by this disentanglement philosophy. *Id.* at 9 (citing *S. Comm. on Gov't Oversight &*

---

[4] The PERC Defendants also assert that the general purpose of SB 256 was transparency and provide bill sponsors' statements in support. ECF 164 at 5–6. The PERC Defendants argue that this Court should consider the payroll deduction ban in the context of the entire bill when considering if the ban supports a public purpose.

*Accountability* 57:43–1:00:38 (Mar. 7, 2023)) (bill sponsor who stated that the payroll deduction ban would promote face-to-face conversations was asked if the ban would mandate face-to-face conversations, and responded it would not; sponsor further suggested that the ban allowed for a wide variety of dues collection methods and the goal was to remove government from the collection process); *id.* at 13 (*citing S. Comm. on Gov't Oversight & Accountability* 2:31:43–2:33:33 (Mar. 7, 2023)) (bill sponsor who previously stated that the ban would allow union members to see how much they are paying in union dues made this statement when arguing that public employees would receive larger pay checks if the ban were adopted).[5]

The PERC Defendants' argument that the purpose of the payroll deduction ban is transparency is arguably undermined by the context in which transparency was discussed in the legislative record. This Court previously stated that the PERC Defendants must "point[] to evidence in the record" establishing their claimed public purpose. ECF No. 154 at 59. However, the relevant case law is anything but clear on how much evidence must exist in the record to support that claimed public purpose or how this Court should weigh conflicting evidence in the legislative record. *See, e.g.*, *Ass'n of Equip. Mfrs. v. Burgum*, 932 F.3d 727 (8th Cir. 2019) (noting the

---

[5] The PERC Defendants acknowledge that statements related to this disentanglement philosophy appear in the legislative record, but they assert that the Florida Legislature's purpose is broader than those statements suggest and note that laws regularly serve more than one purpose. ECF No. 169 at 7–8.

government must demonstrate more than a conceivable or incidental public purpose in the legislative record); *Equip. Mfrs. Inst. v. Janklow,* 300 F.3d 842, 860–61 (8th Cir. 2002) (finding that the legislative history of the challenged act contained no mention of purpose, but other evidence of the act's effects showed that it served an impermissible private purpose); *see also 21st Century Oncology, Inc. v. Moody*, 401 F.Supp.3d 1351, 1360–62 (N.D. Fla. 2019) (concluding that the bill sponsor's and supporting lobbyists' statements made in front of a senate committee showed that the bill was intended to address an issue of statewide importance rather than impermissible private interests). Neither Plaintiffs nor the PERC Defendants have pointed to binding authority with respect to this question, nor is this Court aware of any.

This Court need not create a new standard. For purposes of this analysis, this Court will assume *arguendo* that the purpose of the payroll deduction ban is transparency and that the PERC Defendants have demonstrated that this purpose is adequately supported by the legislative record.[6]

---

[6] Plaintiffs contend that they automatically prevail if this Court finds that the PERC Defendants failed to show that their stated public purpose appears in the legislative record. ECF No. 167 at 6. However, case law suggests that Plaintiffs would only prevail at this step of the analysis if this Court determined that the payroll deduction ban serves an impermissible private purpose. *See Janklow*, 300 F.3d at 861–62 (concluding that the challenged act violated the Contracts Clause because it served to directly adjust the rights of responsibilities of dealers and manufacturers under agreements, not to advance a broad social interest); *21st Century Oncology, Inc.*, 401 F.Supp.3d at 1360–62 (stating that the government's asserted purpose can be undercut by showing that the challenged law is intended to confer a private benefit to special interest groups rather than serving the proffered legitimate interest; court continued Contracts Clause analysis

Next, this Court considers the level of deference this Court should afford in conducting its tailoring analysis.

2

Assuming *arguendo* that the PERC Defendants have demonstrated that the payroll deduction ban was enacted for a legitimate public purpose, it must be drawn in an " 'appropriate' and 'reasonable' way to advance" that purpose to be valid under the Contracts Clause. *Sveen*, 584 U.S. at 819 (citing *Energy Rsrvs. Grp.*, 459 U.S. at 411–12). The parties dispute the level of deference that this Court is required to give to the legislature's judgment regarding the necessity and reasonableness of the ban. Plaintiffs argue that because it impairs public contracts to which the State (or a State subdivision)[7] is itself a party, rather than purely private contracts, this Court should

---

even after concluding that plaintiff had not shown that it was substantially likely that the challenged statute served an illegitimate private interest or special interests); *Burgum*, 932 F.3d at 734 (concluding that the act likely violated the Contracts Clause because the act did not mention public benefits and instead had the narrow focus of restricting the rights of farm equipment manufacturers to benefit farm equipment dealers).

Plaintiffs have not demonstrated that the payroll deduction ban serves an impermissible private purpose. Plaintiffs provided evidence tending to show that the Florida Legislature's predominant purpose for enacting the payroll deduction ban was to disentangle the State from the practice of collecting and dispersing union dues. But this does not appear to be an impermissible private purpose benefitting special interest groups. And Plaintiffs have not argued or cited any authority holding that a legislature's ideological goals regarding the role of government could not serve a public purpose.

Separately, this Court declines to rule that a challenged act may violate the Contracts Clause simply because counsel for the government bases its arguments on one public purpose among other public purposes that appear in the legislative record.

[7] At times PERC Defendants have argued that it is significant that the State is not itself a party to the CBAs, only State subdivisions. The Eleventh Circuit has not addressed this particular

16

apply heightened scrutiny. ECF No. 167 at 16–18. In other words, Plaintiffs argue that this Court should afford less deference to the legislature's judgment regarding the reasonableness and necessity of the payroll deduction ban. On the other hand, the PERC Defendants argue that the provision does not alter the State's "own financial obligations," and thus this Court should apply the " 'customary,' substantial deference" that is applied to impairment of private contracts. ECF No. 164 at 19–23.

No binding authority announces the rule the PERC Defendants ask this Court to adopt. Instead, this Court is left with only a few Supreme Court decisions that offer limited guidance with respect to the level of deference this Court should use in its tailoring analysis. For example, in *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1 (1977), the Court considered a law that reneged on States' financial obligations to bondholders. In its analysis, the Court distinguished between "laws impairing the obligations of private contracts" from those by which "a State impairs the obligations of its own contract." *Id.* at 23, 25. When reviewing provisions affecting only private contracts, the Supreme Court explained, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.* at 23. But where "the State's self-interest is at stake," such as when the State is modifying its own "financial obligations," the Court found that "complete deference" is not

---

argument, and the other circuits to consider it have rejected it. *See, e.g.*, *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 370 (2d Cir. 2006).

appropriate. *Id.* at 25–25. In such circumstances, a reviewing court may sustain the challenged provision only after finding that it was both "reasonable" and "necessary" to serve the State's legitimate public purpose. *Id.* at 29.

The Supreme Court took up the question of deference again in *Energy Reserves Group*. There the Court concluded that the "stricter standard" from *U.S. Trust Co.* did not apply because the law at issue did not involve the State "alter[ing] its own contractual obligations." *Energy Rsrvs. Grp.*, 459 U.S. at 412 n.14. The Court explained that "courts properly defer to legislative judgment" unless "the State itself if a contracting party," *id.* at 412–13, and distinguished "public from private contracts." *Id.* at 412 n.14. While the Court's language generally discussed circumstances "[w]hen the state is a party to the contract," it cited only *U.S. Trust Co.* and other cases in which a state attempted to "walk away from its financial obligations." *Id.* The Court emphasized that "[i]n almost every case, the Court has held a governmental unit to its contractual obligations when it enters financial or other markets." *Id.*

What can this Court glean from these binding Supreme Court decisions? For starters, they do not announce the rule that the PERC Defendants put forth. Although the context of these cases concerned impairment of public contracts involving states' financial interests, the Court has not held that *only* cases where a state acts in its own pecuniary interest—let alone, a *significant* pecuniary interest—trigger less deference

with respect to the tailoring analysis. Indeed, the Supreme Court has also made plain that, "in almost every case," it "has held a governmental unit to its contractual obligations when it enters financial *or other markets*." *Energy Rsrvs. Grp.*, 459 U.S. at 412 n.14 (emphasis added). In short, these cases support the general rule of thumb that a state's decision to renege on its contractual obligations—often, but not necessarily, involving a state's pecuniary interests—is reviewed with less deference than is customarily afforded a legislative determination to impair private contracts.

The Eleventh Circuit has neither articulated the rule the PERC Defendants ask this Court to employ, nor provided any further guidance for this Court with respect to what level of deference it should afford legislative decisions that substantially impair public contracts.

And as for non-binding authority, other circuits have fleshed out their own approaches to determining what level of deference to apply when states substantially impair public contracts. *See, e.g.*, *Sullivan v. Nassau Cnty. Interim Fin. Auth.*, 959 F.3d 54, 66 (2d Cir. 2020) (finding less deference is appropriate when impairments are "imposed to benefit the state financially, or as a matter of political expediency"); *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of the V.I.*, 842 F.3d 201, 212 (3d Cir. 2016) (less deference is appropriate when a state is a "contracting party"); *Balt. Tchrs. Union v. Mayor & City Council of Balt.*, 6 F.3d 1012, 1019 (4th Cir. 1993) ("Public contracts

19

. . . must be more scrupulously examined" than private contracts); *Pizza*, 154 F.3d at 323 (deference not appropriate for law abrogating contractual right of public employees to make political contributions through wage checkoffs because "the state has an obvious self-interest in muting public employee unions"); *Elliot v. Bd. of Sch. Trs.*, 876 F.3d 926, 936–38 (7th Cir. 2017) (level of deference depends on "the severity of the impairment and on the State's self-interest," and the state's "self-interest is at stake" in area of public education). But, to be clear, none of these circuits have announced the rule that PERC Defendants ask this Court to adopt either.

Although no binding authority requires that the State act in its own pecuniary interest before this Court may afford less deference in its tailoring analysis, the facts before this Court demonstrate that the payroll deduction ban serves the State's pecuniary interest. The PERC Defendants argue that the payroll deduction ban "alters none of Florida's 'own financial obligations'" because "[t]he cost to facilitate dues deduction has always been quite small" and because "Florida law always guaranteed public employers the option to negotiate reimbursement of those costs." ECF No. 164 at 17–18 (emphasis omitted). But a "small" cost that the State has promised to bear is still a financial obligation of the State, and PERC Defendants cite no binding authority indicating otherwise. Nor have any of the circuits concluded that a "small" financial obligation does not implicate the State's self-interest. And as Plaintiffs note, the bill's sponsors cited saving the State money as a

reason to support the proposal during floor debates and committee hearings. *See* ECF No. 167 at 18 (citing *S. Floor Debate* 1:21:16–1:24:26 (Mar. 29, 2023); *H. State Affs. Comm.* 01:20:52–1:20:57 (Apr. 11, 2023)). Finally, the fact that public employers previously had the right to "negotiate reimbursement" of the cost does not mean that the ban did not provide something of value to the State. On the contrary, the fact that public employers would have had to *negotiate* for reimbursement indicates that shifting the cost has value. Accordingly, even if this Court were to conclude that less deference is applied only when a state acts in its own pecuniary interest when impairing a public contract, the payroll deduction ban appears to meet this standard subjecting it to less deference.

Attempting to avoid this conclusion, the PERC Defendants suggest that any pecuniary interest at stake in this case is only "miniscule," and therefore, this Court should not find that the State was acting in its own interest by enacting the payroll deduction ban. *See* ECF No. 169 at 10. But the PERC Defendants cite zero authority supporting the proposition that a state acts in its own interest only if it has more than a "miniscule" pecuniary interest at stake. Accordingly, this Court declines to adopt the PERC Defendants' brand-new rule that states are owed deference when substantially impairing contracts unless (1) they act in furtherance of their own pecuniary interest, and (2) only if that interest is significant.

But the question remains—what level of deference should this Court give to the State's decision to substantially impair existing collective bargaining agreements by enacting the payroll deduction ban? Ultimately, this Court need not decide. Even if this Court employed the customary deference to legislative decision making usually reserved for judging the impairment of private contracts, the payroll deduction ban, as enacted, is not a reasonable way to advance the proffered legitimate public purpose, as explained below.

3

The final step of the analysis requires this Court to determine whether the payroll deduction ban is both necessary and reasonable to address its stated purpose. *See Conn. State Police Union v. Rovella*, 36 F.4th 54 (2d Cir. 2022). The necessity inquiry concerns whether the government considered contractual impairment equal to other policy alternatives and whether it imposed a more drastic impairment than required. *See United Steel*, 842 F.3d at 212–13. The reasonableness inquiry considers whether, in context, a "more moderate course" is available to achieve the government's purpose. *Buffalo Tchrs.*, 464 F.3d at 371. Regardless of which level of deference is applied, the government's actions must be necessary and reasonable. *See Rovella*, 36 F.4th at 67 (even customary deference "can be overcome by" evidence that state action was "either unreasonable or unnecessary").

22

This Court finds the payroll deduction ban is not reasonable, and therefore violates the Contracts Clause regardless of which level of deference applies. Because Plaintiffs have demonstrated the payroll deduction ban is not reasonable, this Court need not address necessity at this juncture. *See United Steel*, 842 F.3d at 213–14 (declining to address whether law was necessary because finding it unreasonable "is alone sufficient to render it improper under the Contract Clause").

The payroll deduction ban is not a reasonable impairment of contracts because it impairs the parties' existing bargained-for CBAs before they expire without justification. Impairment of a CBA before it expires can be reasonable in light of an unanticipated change in circumstances. *See id.* at 214 (citing *U.S. Tr. Co.*, 431 U.S. at 32). For example, a sudden fiscal emergency or unexpected social crisis has justified impairing a contract before it expired. *See Rovella*, 36 F.4th at 67 (genuine crisis in confidence following George Floyd's murder justified impairing CBAs pre-expiration); *Sullivan*, 959 F.3d at 57, 67–68 (fiscal emergency justified impairment). But absent an unanticipated change in circumstances, it is not reasonable to disrupt the parties' bargained-for terms in their existing agreements.

Likewise, a contractual impairment "is not a reasonable one if the problem sought to be resolved by an impairment of the contract existed at the time the contractual obligation was incurred." *United Steel*, 842 F.3d at 213–14 (citation omitted) (unreasonable to impair contract mid-term despite fiscal crisis where

government was fully aware of its financial circumstances when it negotiated the contract). Allowing the government to blame a problem that existed at the time the contract was negotiated to later extricate itself from that contract would render the Contracts Clause a "dead letter." *Id.* at 214–15.

The "problem" to be resolved here—i.e., providing for payroll deductions to collect union dues—was a statutory right when the existing CBAs were negotiated. All parties were aware of the existence of payroll deductions as a potential term in their CBAs. Presumably, the parties were also aware of alternatives to payroll deductions at that time. Given this knowledge at the time the existing CBAs were negotiated, and absent an unanticipated change in circumstances, it is unreasonable to substantially impair these agreements before their expiration by nullifying an express term of each agreement. *See Spannaus*, 438 U.S. at 247 (noting that statute that nullified express term of company's contractual obligations included no "provision for gradual applicability or grace periods," and that "there is no showing in the record . . . that this severe disruption of contractual expectations was necessary to meet an important general social problem").

Even under the customary deference afforded to laws impairing private contracts, the provision is not reasonable. *See id.* (holding that "[t]he presumption favoring 'legislative judgment as to the necessity and reasonableness of a particular measure,' simply cannot stand" in a case involving a statutory impairment of private

24

contract terms that included no gradual applicability or grace periods). Such deference "is not blind; it can be overcome by compelling evidence from plaintiffs that the State's actions were . . . unreasonable." *Rovella*, 36 F.4th at 67. Here, Plaintiffs point to evidence that the House bill sponsor did not even understand that the payroll deduction ban would apply to existing contracts. *See* ECF No. 167 at 23; *H. Floor Debate* 07:38:56–07:39:50 (Apr. 25, 2023). This Court cannot defer to a judgment the legislature itself did not make, and here, the record suggests that the Florida Legislature did not determine that impairing existing contracts was a reasonable means of advancing its intended purpose.

But even if the passage of the payroll deduction ban, as enacted, represents a legislative judgment that impairment of existing contracts is reasonable, the record undermines that judgment. No evidence in the record demonstrates a sudden change in circumstances to support impairing the existing CBAs before their expiration. The PERC Defendants claim the payroll deduction ban increases transparency by ensuring public employees are more informed about dues and increasing interactions between employees and their union representatives. ECF No. 169 at 7–9. But the record does not show their goal of transparency is an urgent priority resulting from an unanticipated change in circumstances. Nothing suggests the public employers were unaware of the importance of transparency when negotiating the CBAs, such that they could not have negotiated for that interest at that time. Absent any evidence

of changed circumstances, this Court finds it is unreasonable to impair the existing CBAs before their expiration, especially considering that the CBAs may last no longer than three years under Florida law. *See* § 447.309(5), Fla. Stat. Some have already expired during the pendency of this litigation, and those remaining will expire relatively soon. *See* ECF No. 169 at 10. When the remaining CBAs expire, the public employers are free to re-negotiate them in a way that incorporates the state's concerns about transparency. But it is not reasonable to impair them before their expiration.

For these reasons, under either level of deference, the payroll deduction ban as applied to the remaining Union Plaintiffs with CBAs violates the Contracts Clause.

\* \* \*

Accordingly,

**IT IS ORDERED:**

1. Counts I and II are **DISMISSED without prejudice for lack of standing.**

2. Counts III, V, VI, and VII are **DISMISSED with prejudice.**

3. As to Plaintiffs UFF-UF, UFF, and ACEA, Count IV is **DISMISSED as moot** because these Plaintiffs' collective bargaining agreements have expired.

4. As to Plaintiff Lafayette Education Association, Count IV is **DISMISSED without prejudice for lack of standing**.

5. This Court declares that section 447.303(1)'s prohibition on the collection of union dues through payroll deductions, as applied to Pinellas Classroom Teachers Association's and Hernando United School Workers's existing collective bargaining agreements, is unconstitutional.

6. The Clerk shall enter judgment stating:

> "Counts I and II are **DISMISSED without prejudice for lack of standing**. Counts III, V, VI, and VII are **DISMISSED with prejudice** because Defendants are entitled to summary judgment. As to Plaintiffs UFF-UF, UFF, and ACEA, Count IV is **DISMISSED as moot** because these Plaintiffs' collective bargaining agreements have expired. As to Plaintiff Lafayette Education Association, Count IV is **DISMISSED without prejudice for lack of standing**.

> Judgment is entered in favor of Pinellas Classroom Teachers Association and Hernando United School Workers and against Defendants with respect to Count IV, because the payroll deduction ban violates Article I, Section 10 of the United States Constitution as applied to these Plaintiffs' existing collective bargaining agreements. This Court declares that section 447.303(1)'s prohibition on the collection of union dues through payroll deductions, as applied to Pinellas Classroom Teachers Association's and Hernando United School Workers's existing collective bargaining agreements, violates these Plaintiffs' rights under Article I, Section 10 of the United States Constitution. This Court **GRANTS** these Plaintiffs' request for a permanent injunction. The PERC Defendants, their successors and all those acting in concert with them or at their direction are enjoined from implementing or enforcing section 447.303(1) against these Plaintiffs. Defendants School Board of Pinellas County and School Board of Hernando County, their successors, and all those acting in concert with them or at their direction, are enjoined from invoking section 447.303(1) as a defense in any forum with respect to the existing collective bargaining agreements, including without limitation in any grievance

meeting or arbitration, as a basis for refusing to honor the dues-deduction provisions in their existing collective bargaining agreements. This injunction expires upon expiration of these Plaintiffs' existing collective bargaining agreements."

7. This Court also retains jurisdiction in this case for the purpose of determining entitlement to and amount, if any, of attorneys' fees.

8. The Clerk shall close the file.

**SO ORDERED on November 6, 2024.**

**s/Mark E. Walker**
**Chief United States District Judge**